1999 UT 22

**Trevor THOMPSON, Plaintiff and Appellant,**

v.

**Connie JESS, aka Connie Stroup, dba Motel 9/Rio Damian Motel, and Does 1 through 10, Defendants and Appellees.**

**No. 980127.**

Supreme Court of Utah.

March 12, 1999.

John Paul Kennedy, Salt Lake City, and David J. Bennion, San Jose, Cal., for plaintiff.

Stephen G. Morgan, Joseph E. Minnock, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 Trevor Thompson appeals from the district court's grant of summary judgment in favor of Connie Jess, owner of four motels in Duchesne, Utah. The district court ruled, as a matter of law, that Thompson could not recover from Jess for injuries sustained while erecting a steel pipe for use as a sign post at one of Jess's motels. We affirm.

## BACKGROUND

¶ 2 On or about March 9, 1995, Jess phoned AmeriKan Sanitation to arrange for the purchase and delivery of a used steel pipe. Jess requested a hollow pipe approximately 20 feet in length with an 8-inch diameter, one that would fit vertically over an

existing pipe stub secured to the ground in front of one of her motels, which stub would support the larger pipe for use as a sign post. After agreeing upon a price, Jess requested that the pipe be delivered to her motel.

¶ 3 Two employees of AmeriKan Sanitation, Dennis Jensen and Trevor Thompson, delivered the pipe. When Jensen inquired where to place the pipe, Jess told him she wanted it installed over the existing pipe stub. Jensen responded that he had been instructed only to deliver the pipe and that he was not equipped to erect it in the best manner. Jess then asked Jensen if he would install the pipe, and he agreed to do so, believing he could improvise by hoisting the pipe with the winch truck and tools he had with him.

¶ 4 At that point, Jess's involvement in erecting the pipe ceased, and she went inside the motel. Jensen, who had hoisted similar pipes more than a hundred times before, determined on his own the manner and method of lifting and installing the pipe. For leverage, Jensen set up stabilizing poles in an A-frame formation. He then attached to the pipe a "system-seven" chain and a hook using a "trucker's hitch" or "logger's hitch"—a method of fastening pipe, which Jensen had used many times prior, whereby the weight of the pipe pulls the chain tight. Jensen connected the chain to a winch cable that was strung over the A-frame and proceeded to hoist the pipe with the winch attached to his truck. Thompson stood near the back of the truck and attempted to guide the elevated pipe onto the pipe stub protruding from the ground.

¶ 5 After lifting the pipe as high as this method would allow, Jensen and Thompson discovered they were approximately two inches short of being able to raise the pipe over the top of the pipe stub. They decided to lower the pipe to the ground and obtain different equipment that would lift the pipe the requisite height. In the process of lowering the pipe, however, slack developed in the chain, and the pipe slipped out, bouncing on the ground and striking Thompson in the leg. As a result of the injuries sustained

from this incident, Thompson's leg was amputated below the knee.[1]

¶ 6 The day following the accident, Jensen returned to the site with a backhoe and erected the pipe without problem using the same chain-hitch method. Both Jensen and Thompson, as well as their employer, AmeriKan Sanitation, testified after the accident that had they known in advance they would be asked to raise and install the pipe, they would have arrived prepared with a backhoe or crane in the first instance. However, after agreeing to install the pipe for Jess, neither Jensen nor Thompson informed her that a backhoe or crane was necessary to do the job. Rather, as reflected by the record, Jensen simply told Jess that although he lacked the best equipment, he would nonetheless erect the pipe. Jensen devised his own technique for the task, and Thompson helped him in the attempt.

¶ 7 In April 1997, Thompson filed suit against Jess, alleging that she was negligent in the control she exercised over installation of the pipe and in failing to take or require special precautions in the performance of the job. After the parties conducted discovery, Jess moved for summary judgment, arguing that (1) she did not direct or otherwise control the manner or method of installing the pipe, and therefore owed no duty of care to Thompson or Jensen to insure they raised the pipe safely, and (2) she cannot be held vicariously liable for the negligent acts of the independent contractor she hired, regardless of whether the work involved peculiar risks or was inherently dangerous, because the injuries were suffered by an employee of that independent contractor. The district court granted Jess's motion for summary judgment, ruling that under *Dayton v. Free*, 46 Utah 277, 284–85, 148 P. 408, 411 (1914), Jess owed Thompson no duty of protection or warning concerning performance of the task because she did not exercise control over the manner or method utilized to install the pipe.

¶ 8 On appeal, Thompson contends that the district court erred in granting summary judgment. Thompson argues that by re-

---

1. Shortly after the accident, Thompson applied for and began receiving workers' compensation benefits through his employer, Amerikan Sanitation.

questing that he and Jensen erect the pipe when they were not obligated to do so, and by directing them to install the pipe over the existing pipe stub, Jess asserted control over the work and thereby assumed a duty of care to him under the "retained control" doctrine set forth in section 414 of the Restatement.[2] Thompson also submits that, under section 413 of the Restatement, the work Jess requested posed "a peculiar unreasonable risk of physical harm to others" and that, consequently, Jess had a duty to take appropriate safety precautions. By not taking measures to ensure the safety of the work, asserts Thompson, Jess breached her duties of care under these provisions. Thompson argues that Jess knew or should have known from erecting sign posts at her other motels that a crane or backhoe was required to install the pole safely.

¶ 9 As an alternative theory of liability, Thompson posits that even if Jess was not directly negligent herself, she nonetheless should be held vicariously liable for the contractor's negligence—in this case, the negligence of Thompson's co-worker, Jensen—because Jess knew the work she requested involved a peculiar risk of physical harm to others. On this point, Thompson urges this court to adopt and apply in his favor sections 416 and 427 of the Restatement. Section 416 imposes vicarious liability on the principal employer for the contractor's negligence if the employer knows or should know that the work involves "a peculiar risk of physical harm to others." Section 427 imposes the same liability for work involving "a special danger to others . . . inherent in or normal to the work."

¶ 10 In response, Jess counters that the trial court did not err in granting summary judgment because (1) she did not control the manner or method in which Thompson and Jensen attempted to lift and install the pole, and therefore owed them no duty of care under the "retained control" doctrine; and (2) sections 413, 416, and 427 of the Restatement provide causes of action to "others"— meaning innocent third parties—not to employees of the independent contractor hired to perform the allegedly dangerous work.

¶ 11 Thus, the principal issues before us are (1) whether Jess owed Thompson a duty of care under the "retained control" doctrine, and (2) whether the "peculiar risk" and "inherently dangerous work" doctrines under sections 413, 426, and 427 of the Restatement provide causes of action in favor of employees of the contractor hired to perform the work at issue.

## STANDARD OF REVIEW

¶ 12 Summary judgment is proper only when "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 841 (Utah 1996). We review the district court's grant of summary judgment for correctness, according no deference to the court's legal conclusions. *See id.*

## ANALYSIS

¶ 13 Utah adheres to the general common law rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement § 409; *see Gleason v. Salt Lake City*, 94 Utah 1, 16, 74 P.2d 1225, 1232 (1937) (noting applicability of said general rule and certain exceptions to it). This general rule recognizes that one who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented. *See* W. Prosser & W. Keaton, *The Law of Torts* 509 (5th ed.1984). The most commonly accepted reason for this rule is that, where the principal employer does not control the means of accomplishing the contracted work, the contractor "is the proper party to be charged with the responsibility for preventing the risk [arising out of the work], and administering and distributing it." *Id.*

¶ 14 In the case at bar, Thompson does not contend that by agreeing to install the pipe over the existing pipe stub, he and Jensen

---

2. All Restatement references herein are to Re-    statement (Second) of Torts (1965).

became Jess's employees. Rather, Thompson relies entirely on certain exceptions to the general rule of nonliability of an employer of an independent contractor: namely, the "retained control" doctrine, and the "peculiar risk" or "inherently dangerous work" doctrine. We address each in turn.

## A. "Retained Control" Doctrine

¶ 15 Thompson charges that Jess should be subject to liability because, by requesting that the pipe be erected and instructing that it be installed over the existing pipe stub, she controlled and directed the work that caused his injuries. In so arguing, Thompson relies on the retained control doctrine, which, as set forth more fully below, is a narrow theory of liability applicable in the unique circumstance where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care, but not enough to become an employer or a master of those over whom the control is asserted. The duty in such situations is one of reasonable care under the circumstances and is confined in scope to the control asserted.

¶ 16 In 1965, the American Law Institute promulgated the retained control doctrine as section 414 of the Restatement, which states:

> § 414. Negligence in Exercising Control Retained by Employer
>
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). This doctrine has not been adopted formally in Utah, although similar principles were discussed in this court's early decision of *Dayton v. Free*, 46 Utah 277, 148 P. 408, 411–12 (1914).

¶ 17 In *Dayton*, this court addressed whether a company that employed an independent contractor was liable for injuries sustained by an employee of that contractor during the blasting of an underground tunnel. *See id.* at 411–12. Citing a number of authorities from other states, the injured employee claimed that because the company, by contract, reserved to itself certain rights pertaining to overall management of the contract work, "the relation between the company and the contractors was not that of independent, but nonindependent, contractors." *Id.* at 411. As a result, argued the injured employee, he should be allowed to recover against the company. The court disagreed, stating:

> [The cited authorities] relate to instances and cases where the proprietor or employer reserved or exercised the right to superintend, direct or control the work, not only with respect to results, but also with reference to methods of procedure or means by which the result was to be accomplished, where the will and discretion of the contractor as to the time and manner of doing the work or the means and methods of accomplishing the results were subordinate and subject to that of the owner or proprietor. We do not find anything in the contract or the evidence [identified by the plaintiff] which brings this case within such a rule.

*Id.* The court concluded that the injury had been caused by the manner in which the work was performed rather than by the nature of the work itself. *See id.* at 412. Because the company exercised no control over the contractor's manner of work, it owed the plaintiff no duty to warn or guard him "against dangers incident to or created by the prosecution of the work, and certainly not to guard or protect him against the negligence of those who had employed him or with whom he labored." *Id.*

¶ 18 This court has not had opportunity to determine the precedential value of *Dayton* with respect to the retained control doctrine. Several federal courts applying Utah law, however, have been called upon to do so. Those courts uniformly have determined that under *Dayton*, a principal employer is not subject to liability for injuries arising out of its contractor's work unless the employer "actively participates" in the performance of the work. For instance, in *Simon v. Deery Oil*, 699 F.Supp. 257, 258

(D.Utah 1988), the court cited *Dayton* for the proposition that a principal employer "retaining an independent contractor to render services has no duty to warn or train employees of the contractor, nor must the principal protect the contractor's employees from the contractor's own negligence, unless the principal has 'actively participated' in the project." *See also Sewell v. Phillips Petroleum Co.,* 606 F.2d 274, 276 (10th Cir.1979), *cert. denied,* 444 U.S. 1080, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980); *Texaco, Inc. v. Pruitt,* 396 F.2d 237, 240 (10th Cir.1968); *Erwin v. Kern River Gas Transmission Co.,* 1997 WL 804238, *3, 1997 Tex.App. LEXIS 6685, *8 (addressing Utah law on issue). We believe the standard relied upon in these cases is correct, and we formally adopt the same. Elaboration on the contours of the standard is needed, however.

¶ 19 Under the "active participation" standard, a principal employer is subject to liability for injuries arising out of its independent contractor's work if the employer is actively involved in, or asserts control over, the manner of performance of the contracted work. *See Conklin v. Cohen,* 287 So.2d 56, 60 (Fla.1973) (holding that under "active participation" standard, principal employer must directly influence manner in which work is performed; no duty arises from "passive nonparticipation"). Such an assertion of control occurs, for example, when the principal employer directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished. *See, e.g., Lewis v. N.J. Riebe Enterprises, Inc.,* 170 Ariz. 384, 825 P.2d 5, 7–8 (1992) (imposing liability where subcontractor's employee was injured as result of new, less safe method of work required by general contractor); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985) (imposing liability where subcontractor was ordered to operate backhoe dangerously close to plaintiff).

¶ 20 The comments to section 414 of the Restatement provide guidance as to the "active participation" requirement:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, *but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.*

Restatement (Second) of Torts § 414 cmt. c. (1965) (emphasis added). In other words, to have "actively participated" in the contracted work, a principal employer must have exercised affirmative control over the method or operative detail of that work. *See Grahn v. Tosco Corp.,* 58 Cal.App.4th 1373, 68 Cal. Rptr.2d 806, 820 (1997), *rev. denied,* 1997 WL 703341, 1998 Cal. LEXIS 494. "[T]he degree of control necessary for the creation of a legal duty must involve either the direct management of the means and methods of the independent contractor's activities or the provision of the specific equipment that caused the injury." *Id.*

¶ 21 Although the requisite level of control over the contractor's manner or method of work does not rise to the level of creating a master-servant relationship, *cf.* Restatement § 414 cmt. a, the principal employer must exert such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way. *Cf. id.* cmt. c. A typical instance in which such an exertion of control might occur is "when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job." *Id.* cmt. b.

¶ 22 The requisite level of control over the contractor's work is well illustrated in *Lewis,* 825 P.2d at 7–8. There, the general contractor, Riebe, hired the subcontractor, Garges, to install a pitched roof constructed of beams and sheets of plywood nailed to the beams. After Garges had already put the plywood in place, Riebe's on-site superintendent told Garges the roof was improperly installed and ordered it redone, specifying the use of H-clips to secure the plywood. Pursuant to this

instruction, Garges employees began removing the nails from each row of plywood, installing H-clips, and then renailing the plywood to the beams. Soon thereafter, however, Riebe's superintendent instructed the Garges employees to use a different, faster method of dislodging the plywood by banging it from underneath. Because this method resulted in plywood being dislodged faster than H-clips could be installed, numerous sheets of plywood were left lying loose on top of the beams. A Garges employee stepped on the loose plywood and fell through the roof, incurring serious injuries. *See id.*

¶ 23 Thus, in *Lewis,* the general contractor interfered with the subcontractor's method of performing the work and instructed that a quicker but less safe method be implemented. A worker was injured as a direct result of the dangerous condition created by the general contractor's method. The court concluded, on the basis of these facts, that the general contractor exercised sufficient control over the means used in performing the contracted work to subject it to retained control liability. *See id.* at 14–15.

¶ 24 Applying these standards to the case at hand, we conclude that Jess did not actively participate in the manner in which Thompson and Jensen attempted to lift and install the steel pipe. After agreeing to erect the pipe, Jensen, not Jess, determined the method for bringing about the desired result. Jensen decided to proceed with the equipment he had with him, and by Jensen's own design, he and Thompson set up the A-frame for use as leverage, fastened the chain to the pipe using the "trucker's hitch" or "logger's hitch" technique, and hoisted the pipe with the winch on Jensen's truck. When this method was unsuccessful, Jensen and Thompson attempted to lower the pipe to the ground and, in the course of doing so, lost control of the pipe. Thompson's injury was caused by the manner of performance, implemented by Jensen, over which Jess exercised no direction, control, or supervision. The only control Jess exerted was in directing that the pipe be installed over the pipe stub. This amounted merely to control over the desired result, which is insufficient to come within the retained control doctrine.

¶ 25 Particularly revealing is the fact that Jensen returned to the site with a backhoe the day after the accident and erected the pipe without incident using the same chain-hitch method. Nothing precluded Jensen from retrieving the backhoe before attempting to hoist the pipe in the first instance. The backhoe was stored only two to three miles away at the time, and nothing suggests that Jess required Jensen to install the pipe at the moment of delivery. Jensen alone chose to attempt installation of the pipe without a backhoe.

¶ 26 Thus, because Jess did not actively participate in or otherwise exercise affirmative control over the manner or method of performance utilized by Jensen and Thompson, she owed Thompson no duty of care under the retained control doctrine.[3] The trial court was correct in so ruling.

*B. "Peculiar Risk" or "Inherently Dangerous Work" Doctrine*

¶ 27 Thompson also relies on sections 413, 416, and 427 of the Restatement and urges this court to adopt those sections in his favor as exceptions to the general rule that one who employs an independent contractor is not liable for injuries arising out of the contract work. These sections are similar in wording and are commonly referred to as the "peculiar risk" doctrine, *see, e.g., Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d

---

**3.** We note that the term "retained control" doctrine is somewhat of a misnomer. Under the standards announced herein, a duty of care is imposed if the principal employer asserts affirmative control over or actually participates actively in the manner of performing the contracted work. "Retained," to the extent the word implies passivity or nonaction, is inapt.

The term "retained control" may have a more syntactically correct application to sophisticated parties who, by contract, stipulate which party will control the manner or method of work or the safety measures to be taken—such as in contracts between general contractors and subcontractors involved in construction projects. *See Dayton,* 148 P. at 411 (noting that under terms of contract, principal employer did not reserve right to direct or control prosecution of work or any of contractor's workers). The issue, however, of whether a duty of care may be imposed solely as a result of a such a contractual reservation is not before us.

72, 854 P.2d 721, 725 (1993) (en banc), or the "inherently dangerous work" exception, *see, e.g., Wagner v. Continental Cas. Co.,* 143 Wis.2d 379, 421 N.W.2d 835, 840 (1988).

¶ 28 Section 413 is premised on direct liability for a principal employer's negligence in failing to insure that special precautions are taken in the contractor's work. That section provides:

§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor

One who employs an independent contractor to do work which the employer should recognize as likely to create; during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (1965).

¶ 29 Sections 416 and 427 impose vicarious liability on the principal employer for the contractor's negligence, even if the employer reasonably provides for precautions in the contract work. Those sections state:

§ 416. Work Dangerous in Absence of Special Precautions

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

. . . .

§ 427. Negligence as to Danger Inherent in the Work

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts §§ 416, 427 (1965). The purpose of these sections is "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries." *Privette,* 21 Cal.Rptr.2d 72, 854 P.2d at 725. *Privette* held that this purpose is not advanced when these exceptions are applied in favor of a contractor's employees who are covered by workers' compensation. *See id.* 21 Cal.Rptr.2d 72, 854 P.2d at 726–30; *see also Wagner,* 421 N.W.2d at 840–44 (detailing reasons for not adopting sections 413, 416, and 427 in favor of employees of independent contractors).

¶ 30 We agree with *Privette* and *Wagner* and decline to apply section 413, 416, or 427 of the Restatement in the manner Thompson proposes. Whether based on direct negligence under section 413 or vicarious liability under sections 416 and 427, these provisions have no application when the injured person is an employee of the independent contractor undertaking the allegedly dangerous work. The majority of jurisdictions that have examined this issue have decided likewise.[4]

4. *See Morris v. City of Soldotna,* 553 P.2d 474, 481–82 (Alaska 1976); *Welker v. Kennecott Copper Co.,* 1 Ariz.App. 395, 403 P.2d 330, 337–39 (1965); *Jackson v. Petit Jean Elec. Coop.,* 270 Ark. 506, 606 S.W.2d 66, 69 (1980); *Privette,* 21 Cal.Rptr.2d 72, 854 P.2d at 726–31; *Ray v. Schneider,* 16 Conn.App. 660, 548 A.2d 461, 466 (1988); *Peone v. Regulus Stud Mills,* 113 Idaho 374, 744 P.2d 102, 105–06 (1987); *Johns v. New York Blower Co.,* 442 N.E.2d 382, 386–88 (Ind.Ct. App.1982); *Dillard v. Strecker,* 255 Kan. 704, 877 P.2d 371, 385 (1994); *King v. Shelby Rural Elec. Coop. Corp.,* 502 S.W.2d 659, 661–63 (Ky.1973); *Parker v. Neighborhood Theatres,* 76 Md.App. 590, 547 A.2d 1080, 1082–83 (1988); *Vertentes v. Barletta Co.,* 392 Mass. 165, 466 N.E.2d 500, 502–03

¶ 31 Along with *Privette* and *Wagner,* *Zueck v. Oppenheimer Gateway Properties,* 809 S.W.2d 384 (Mo.1991) (en banc), is representative of those decisions. As expounded in *Zueck,* if employees of an independent contractor are allowed to avail themselves of the peculiar risk doctrine or inherently dangerous work exception, the principal employer is placed in an untenable position: he or she must anticipate activities that are "inherently dangerous" to the contractor's employees and, if the dangers inhere to the manner in which the work is done, protect against such dangers despite the fact that the employees are best able to identify and address whatever hazards are involved in their own method of performance. Oftentimes, both the risks involved and the protections necessary to avoid the risks are beyond the principal employer's knowledge or capacity. Thus, to avoid the liability imposed by the peculiar risk doctrine or inherently dangerous work exception, the principal employer has an incentive to direct his or her own employees to do the work despite their lack of expertise. Such a choice would limit the principal employer's exposure to that under the Workers' Compensation Act but, at the same time, increase the risk of injury to the principal's employees and innocent third parties. Placing principal employers in such a position distorts the objectives of tort law, and for that reason, the peculiar risk doctrine or inherently dangerous work exception should not apply in favor of employees of the independent contractor performing the work. *See Zueck,* 809 S.W.2d at 387–88.

¶ 32 In addition, sections 413, 416, and 427 each speak of liability for injury "to others," which implies third parties rather than employees of the independent contractor carrying out the contracted work. An early draft of the Restatement included a special note

which, though ultimately not adopted, provided guidance on this point:

**Special Note.** The rules stated in this Chapter are, in general, not applicable to make the defendant who hires an independent contractor liable to two classes of persons.

One consists of the employees, or servants, of the defendant himself. . . .

The other class of plaintiffs not included in this Chapter consists of employees of the independent contractor. . . . One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts. . . . While workmen's compensation acts do not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

Restatement (Second) of Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note at 17–18. The American Law Institute omitted this note due to lack of uniformity of the effect of the various state workers' compensation acts but indicated nonetheless that "certainly the prevailing point of view is that there is no liability on the part of the employer of the independent contractor." 39 A.L.I. Proc. 244, 247 (1962); *see also Monk v. Virgin Islands Water & Power Auth.,* 53 F.3d 1381, 1390–91 (3d Cir.), *cert. denied,* 516 U.S. 914, 116 S.Ct. 302, 133 L.Ed.2d 207 (1995) (referring to same language of tentative draft of Restatement).

¶ 33 The rationale set forth in the special note quoted above is persuasive and provides

(1984); *Zueck v. Oppenheimer Gateway Properties,* 809 S.W.2d 384, 390 (Mo.1991) (en banc); *Sierra Pacific Power Co. v. Rinehart,* 99 Nev. 557, 665 P.2d 270, 273–74 (1983); *Donch v. Delta Inspection Services, Inc.,* 165 N.J.Super. 567, 398 A.2d 925, 927–29 (1979); *New Mexico Electric Serv. Co. v. Montanez,* 89 N.M. 278, 551 P.2d 634, 637–38 (1976); *Whitaker v. Norman,* 75 N.Y.2d 779, 552 N.Y.S.2d 86, 551 N.E.2d 579, 580 (1989); *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 449–54 (N.D.1994); *Curless v.*

*Lathrop Co.,* 65 Ohio App.3d 377, 583 N.E.2d 1367, 1376–78 (1989); *Cooper v. Metropolitan Government of Nashville, Davidson County,* 628 S.W.2d 30, 32–33 (Tenn.Ct.App.1981); *Humphreys v. Texas Power & Light Co.,* 427 S.W.2d 324, 330–31 (Tex.Civ.App.1968); *Tauscher v. Puget Sound Power & Light Co.,* 96 Wash.2d 274, 635 P.2d 426, 428–31 (1981) (en banc); *Wagner,* 421 N.W.2d at 839–44; *Stockwell v. Parker Drilling Co.,* 733 P.2d 1029, 1031–33 (Wyo.1987).

additional support for our holding that sections 413, 416, and 427 of the Restatement have no application to employees of independent contractors performing the work at issue. The phrase "to others" in these sections does not encompass such employees, but rather, innocent third parties. This is consistent with the analysis in *Dayton* and with Tenth Circuit case law applying *Dayton* to this issue. *See Eutsler v. United States*, 376 F.2d 634, 636 (10th Cir.1967) (concluding that phrase "to others" as contained in Restatement § 413 does not include employees of independent contractors); *see also United States v. Page*, 350 F.2d 28 (10th Cir.1965), *cert. denied*, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966) (acknowledging that general law on subject reaches same conclusion as to Restatement § 427).

¶ 34 Holding otherwise would create unfair and anomalous results under Utah's workers' compensation system:

> Courts and legal commentators have expressed concern that to allow an independent contractor's employees who incur work-related injuries compensable under the workers' compensation system to also seek damages under the doctrine of peculiar risk from the person who hired the contractor would give those employees an unwarranted windfall. As these authorities point out, to permit such recovery would give these employees something that is denied to other workers: the right to recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment. This, in effect, would exempt a single class of employees, those who work for independent contractors, from the statutorily mandated limits of workers' compensation.

*Privette*, 21 Cal.Rptr.2d 72, 854 P.2d at 729. Furthermore, given that the exclusive remedy provision of the workers' compensation scheme limits the liability of independent contractors to coverage premiums, permitting an employee of the contractor to recover tort damages against the nonnegligent landowner who employed the contractor would allow for the inequitable result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury.[5]

 ¶ 35 In the present case, there is no question that Thompson was an employee of the independent contractor, AmeriKan Sanitation, at the time of his injury. He was involved in attempting to install the pipe and, indeed, has been receiving workers' compensation benefits through AmeriKan Sanitation since the accident. We have no reason to question the determination (already made as a prerequisite to Thompson's qualifying for such benefits) that Thompson was acting within the course of his employment when injured. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986) (noting that to qualify for workers' compensation benefits, injury must be "by accident" and must arise "in the course of employment"). Accordingly, the trial court correctly determined as a matter of law that Thompson's sole recourse is workers' compensation benefits.

### CONCLUSION

¶ 36 In view of the foregoing analysis, summary judgment in favor of Jess was proper.

¶ 37 Affirmed.

¶ 38 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

---

5. We note that in Utah, this unfairness is exacerbated by the fact that an employee who recovers against a third party is obligated to reimburse the workers' compensation insurer for any amounts paid to or on behalf of the employee. *See* Utah Code Ann. § 34A–2–106(5) (1997).

Thus, if Thompson recovered from Jess for any negligence of Jensen in raising the pipe, he would be required to reimburse AmeriKan Sanitation's insurer for benefits received. Such a reallocation would result in Jess's being exclusively liable for Thompson's injuries.