**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHELLE E. HALE,

    Plaintiff-Appellant,

    and

CLARENCE HALE; RENIE HALE,

    Plaintiff,

v.

DANNY'S CONSTRUCTION
COMPANY, INC.,

    Defendant-Third-Party
    Defendant,

WILLIAMS STEEL COMPANY, a
corporation,

    Defendant Counterclaimant,
    Third Party Plaintiff,

    and

H AND M CONSTRUCTION, a
corporation,

    Defendant-Cross Claimant
    Cross-Defendant-Appellee,

v.

No. 99-4040
(D.C. 95-CV-660)
(Utah)

FINGERHUT COMPANIES, INC., a corporation; WESTERN DISTRI-BUTION, INC. a corporation; NEWCORE CORPORATION, a corporation, dba Vulcraft,

Defendant Cross Claim Defendant.

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, Chief Judge, **BRORBY** and **EBEL,** Circuit Judges.

Michele Hale brought this diversity action in the Utah Federal District Court after her husband, John Hale, was killed in a construction accident. The defendant, H&M Construction Company (H&M), was the general contractor of the warehouse construction project at which the accident occurred. H&M entered into a subcontract with Williams Steel Company (Williams) to provide and install the steel framework of the warehouse. Williams then entered into a subcontract with Danny's Construction, Inc. (Danny's) to erect and install the structural steel. At the time of the accident Mr. Hale was an employee of Danny's, which was

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

immune from suit under Utah's worker's compensation scheme. Following a bench trial, the District Court entered judgment for H&M after finding that it did not owe a duty of care to Mr. Hale under Utah law. Mrs. Hale appeals, and we affirm.[1]

Under Utah tort law, the general rule "recognizes that one who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented." *Thompson v. Jess*, 979 P.2d 322, 325 (Utah 1999). However, Utah recognizes the "retained control" theory of liability as an exception to this rule in contractor cases. *Id.* at 327. This doctrine as applied in Utah holds that the employer of an independent contractor may owe the contractor a limited duty of care if it exercises sufficient control over the contracted work. *See id.* at 326 (citing Restatement (Second) of Torts § 414 (1965)). Thus, the scope of any duty is defined by the amount of control the general contractor actually retains over the work. *See, e,g, id.* ; *Lewis v. Riebe Enters., Inc.* , 825 P.2d 5, 9 (Ariz. 1992).

One way a general contractor can retain control is by actually exercising

---

[1]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* FED. R. APP. P. 34(f); 10th Cir. R. 34.1(A)(2). The case is therefore ordered submitted without oral argument.

control over the manner or methods of job performance. *See Thompson*, 979 P.2d at 328. Courts in other states have also held that a contractual provision assuming responsibility for safety at the site is relevant to determining whether control is retained. *See Lewis*, 825 P.2d at 12. [2] In the present case, the district court looked to both of these factors – contract terms and actual behavior – in reaching its conclusion that H&M had not retained control.

The issue of whether a general contractor has retained sufficient control over the performance of work is a question of fact which should ordinarily be left to the fact-finder. *See Lewis*, 825 P.2d at 10 (citing cases); *Corsetti v. The Stone*

---

[2]Ms. Hale makes much of the fact that the court in *Thompson* relied on *Lewis* and dropped the following footnote, which she argues leaves open the issue of whether, in Utah, a duty of care may be imposed *solely* as a result of a contractual reservation:

> The term "retained control" may have a more syntactically correct application to sophisticated parties who, by contract, stipulate which party will control the manner or method of work or the safety measures to be taken–such as in contracts between general contractors and subcontractors involved in construction projects. . . . The issue, however, . . . is not before us.

*Thompson*, 979 P.2d at 328 n.3 (citations omitted). The presence of this footnote, Ms. Hale contends, indicates that the issue is unsettled, and she urges us to certify the matter to the Utah Supreme Court. We decline to do so.

Ms. Hale relies on *Lewis* and *Corsetti v. The Stone Co.*, 483 N.E.2d 793 (Mass. 1985), for her contention that retained control can be determined solely based on contract language. However, both of those cases make it clear that the issue is one of fact based on contractual language *and* actual control. *See Lewis*, 825 P.2d at 11; *Corsetti*, 483 N.E.2d at 798-99. We have no reason to believe the Utah Supreme Court would go beyond *Lewis* and *Corsetti* to hold a general contractor liable as a matter of law based solely on language in the general contract.

*Co.*, 483 N.E.2d 793, 798 (Mass. 1985). Because the proceedings below took the form of a bench trial, the district court assumed the role of fact-finder, and we may not set aside its findings unless they are clearly erroneous. *See* FED. R. CIV. P. 52(a); *Mid-West Conveyor Co. v. Jervis B. Webb Co.*, 92 F.3d 992, 997 (10th Cir. 1996). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (citation omitted).

The district court was quite thorough in setting forth the bases for its findings. Its order analyzes the contracts between all of the parties,[3] as well as H&M's behavior with respect to the manner and method of the work performed. The court determined that Danny's contractually assumed primary responsibility

---

[3]There were three relevant contracts containing safety provisions in this case: the original contract between the project owner and H&M, the subcontract between H&M and Williams, and the subcontract between Williams and Danny's. The district court determined that none of the contracts read separately would settle who was to be responsible for the safety of the steel erection work as between Danny's and H&M, so it examined the three contracts together. This decision was a legal one, *see Morris v. Mountain States Telephone and Telegraph Co.*, 658 P.2d 1199, 1200 (Utah 1983), which we review de novo, and with which we agree. The district court's assessments of the relationship between the three contracts and the parties' intentions with respect to this relationship, however, are findings of fact subject to the clearly erroneous standard of review. *See Crowther v. Carter*, 767 P.2d 129, 131 (Utah 1989). The court determined that the three contracts taken together gave responsibility for the safety of the steel erection to Danny's. We do not believe this decision to be in error.

for the manner and method of the steel erection work and that H&M did not actually control the day-to-day performance of the steel erection work. There is ample support for these findings in the record and we are not convinced the district court, after hearing the testimony, making credibility findings, and reviewing the documentary evidence, made a mistake.

Finally, Ms. Hale argues that the district court misapplied the law when it concluded that H&M did not owe Mr. Hale a duty because Danny's had assumed "primary responsibility" for the safety of the steel erection. Ms. Hale urges us to adopt the following reasoning: the term "primary responsibility" connotes that H&M must have at least had "secondary responsibility;" if H&M had such secondary responsibility, it can be said to have retained some measure of control; therefore, H&M owed Mr. Hale a duty of care such that it should be liable for his injury. We are not persuaded. Ms. Hale asks us to read a great deal into the district court's single use of the term "primary responsibility." The court makes no reference to "secondary responsibility," and we cannot justify making the "inferential leap" that the court intended to imbue H&M with it. *Ramey Const. Co. v. Apache Tribe of the Mescalero Reservation*, 616 F.2d 464, 467 (10th Cir. 1980) (refusing to interpret trial court's findings and conclusions beyond extent discussed in order). The district court's finding that Danny's had primary responsibility for the safety of the steel erection was simply a logical step toward

its conclusion that H&M did not retain sufficient control over the steel erection to create a duty owed to Mr. Hale.  This straightforward reading of the district court's application of the retained control doctrine fits well with the principle that the duty a general contractor owes is confined in scope to the extent of the control asserted.  We will not distort the district court's logic in order to arrive at a conclusion that misapplies the doctrine.

Accordingly, we  **AFFIRM**  the decision of the district court and   **DENY** Ms. Hale's motion for certification.

ENTERED FOR THE COURT


Stephanie K. Seymour
Chief Judge