2009 UT 45

**Celso MAGANA and Yolanda Magana, Plaintiffs and Petitioners,**

**v.**

**DAVE ROTH CONSTRUCTION, ABM Crane Rental, and John Does I–V, Defendants and Respondent.**

No. 20080629.

Supreme Court of Utah.

July 21, 2009.

Daniel F. Bertch, Kevin K. Robson, Salt Lake City, for petitioners.

Peter H. Barlow, Ryan P. Atkinson, Salt Lake City, for respondent.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 In the spring of 2005, Celso Magana worked for an independent contractor that subcontracted with Dave Roth Construction ("DRC") to frame the walls for a planned restaurant. While Magana was working at the construction site, a load of trusses slipped from its rigging during the off-loading process and fell on Magana. As a result, Magana suffered spinal injuries and is now paraplegic.

¶ 2 Magana filed a negligence claim against DRC and ABM Crane Rental, asserting, in part, that DRC's superintendent, Brett Campbell, negligently rigged the bundle of trusses that fell on Magana. DRC later moved for summary judgment, claiming that Campbell did not actively participate in the off-loading of the trusses and, therefore, DRC was shielded from liability by the retained control doctrine. In response, Magana argued liability under two negligence theories: retained control and direct negligence.

¶ 3 The district court granted DRC's motion for summary judgment, dismissing Magana's negligence claim against DRC. The court of appeals affirmed the district court's decision. Both courts determined that even if Campbell directly participated in rigging the trusses, he did not actively participate in the rigging process in such a way as to retain sufficient control to expose DRC to liability for the negligent rigging of the trusses. Neither court addressed Magana's direct negligence argument outside the context of the retained control doctrine.

¶ 4 We granted certiorari on the question of whether the court of appeals erred in its analysis of Magana's active participation argument. For the reasons discussed below, we hold that (1) the court of appeals correctly analyzed Magana's retained control argument, but (2) erred in failing to consider Magana's direct negligence argument outside the context of the retained control doctrine. Accordingly, we reverse the court of appeals'

decision, and we remand this case to the district court to further consider Magana's direct negligence claim.

## BACKGROUND

¶ 5 Because we are reviewing a grant of summary judgment, we view " 'the facts and all reasonable inferences drawn therefrom in the light most favorable' " to Magana, the nonmoving party.[1] Accordingly, we recount the facts in the light most favorable to Magana.

¶ 6 The owner of a future restaurant hired DRC as the general contractor on the construction project. As general contractor, DRC was responsible for overseeing the construction of the building, purchasing building materials for the project, and securing necessary subcontractors. DRC hired Brett Campbell to superintend and manage the project. Among other duties, Campbell's job description included inspecting and ensuring quality control of the work completed by the subcontractors, including Circle T Construction ("Circle T").

¶ 7 DRC subcontracted with Circle T to provide "framing labor and crane work." Circle T conducted most of the framing work, and Campbell and DRC participated in related tasks. For example, Campbell worked with Circle T's owner, Ted Alexander, to determine where to place the walls, and Campbell snapped the lines marking their location. Further, DRC supplied the lumber and arranged for the shipping of the framing materials to the project site. In addition, Magana claims that DRC was responsible for determining where on the construction site the lumber should be placed.

¶ 8 On the day before the accident, Campbell notified Alexander that truss joists were arriving that day and that Circle T was responsible for off-loading the joists by crane. Alexander later learned that the crane company Circle T normally used was not available and notified Campbell. Campbell offered to help Alexander find another crane company, and both agreed to start calling crane companies. Campbell eventually found

1. *R&R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 18, 199 P.3d 917 (quoting *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600).

an available crane company and scheduled it to off-load the truss joists the following day.

¶ 9 The next morning, Campbell "got Ted Alexander and the truck driver [of the truck carrying the trusses] together to work out the exact place to unload the trusses." The crane showed up later that morning, and Alexander directed the crane's operator where to set up the crane and where to off-load the trusses. After the crane was set up, Alexander and Campbell began off-loading the trusses. Before lifting the first load of trusses from the truck bed, the bundles were rigged to a hoist. The crane off-loaded the first bundle without any help or direction from Campbell, after which Circle T employees removed the rigging straps and returned them to Alexander.

¶ 10 Magana testified that after the first bundle of trusses was off-loaded, he saw Campbell on the bed of the flatbed truck with Alexander, and both were placing straps around the second bundle of trusses.

¶ 11 While this second bundle was being carried to the off-loading site, the bundle became unbalanced and fell on Magana. As a result, Magana suffered spinal injuries and is now paraplegic. When the load fell on Magana, Campbell was on the truck bed helping Alexander unload boxes of blocking.

¶ 12 The off-loading process was solely Circle T's responsibility. Campbell and Alexander both testified that even if Campbell had helped in rigging the trusses, he did not retain any control over the process or direct, instruct, or control the manner in which the truss joists were rigged or off-loaded. Both also testified that if Campbell had assisted Alexander to rig the trusses, Alexander would have retained complete control over Campbell's rigging work.

¶ 13 ABM Crane Rental did not bill either DRC or Circle T for its work on the date of the accident. But the owner of the crane company stated that he would have billed DRC for the work, not Circle T.

¶ 14 Following the accident, Magana filed a complaint alleging that ABM Crane Rental's and DRC's negligence caused Magana's injuries. Magana subsequently settled with

ABM Crane Rental. DRC moved for summary judgment. In support of the motion, DRC argued that Circle T, not Campbell, controlled the manner in which the trusses were rigged and off-loaded and, therefore, DRC was not liable for Campbell's negligence, even if Campbell were the one who negligently rigged the trusses.

¶ 15 In response, Magana asserted two negligence theories. First, Magana made a direct negligence argument. Specifically, Magana claimed that Campbell directly helped rig the second load of truss joists and that there was an issue of fact as to whether Campbell was the one who "failed to safely rig the second load of truss joists." Magana also made this argument before the court of appeals and does so before us as well.

¶ 16 Second, Magana argued that because Campbell (1) was responsible for on-site safety, (2) determined where to place the walls and snapped a line marking their location, (3) hired the crane company, (4) directed the crane where to set up and off-load the trusses, and (5) directly participated in rigging the second load, DRC actively participated in Circle T's work and was liable for Magana's injuries under the retained control doctrine.

¶ 17 The district court granted DRC's motion and determined that the central issue in the matter was whether DRC, through Campbell, actively participated in the off-loading process. The court found that DRC did not actively participate, and, based on that finding, the court granted the summary judgment motion. Magana appealed the decision to the Utah Court of Appeals, which likewise held that Magana failed to show that Campbell exercised sufficient control over Alexander or Circle T to meet the active participation standard.[2]

¶ 18 Magana subsequently filed a petition for certiorari review, which we granted. Pursuant to our jurisdiction under Utah Code section 78A-3-102(3)(a) (2008), we now review the court of appeals' decision and determine whether the court of appeals correctly applied the active participation standard to Magana's claims.

2. *Magana v. Dave Roth Constr.*, 2008 UT App 240U, 2008 WL 2545064.

## STANDARD OF REVIEW

¶ 19 On certiorari, we review the court of appeals' decision for correctness.[3]

## ANALYSIS

¶ 20 We hold that the court of appeals' analysis of the active participation standard, *as it relates to DRC's argument that it did not retain control,* was correct. But the active participation standard does not apply to Magana's direct negligence argument. Because a question of fact remains regarding Campbell's direct negligence in causing Magana's injuries, the court of appeals erred in affirming the district court's dismissal of Magana's negligence claim against DRC.

## I. THE COURT OF APPEALS CORRECTLY APPLIED THE ACTIVE PARTICIPATION STANDARD

¶ 21 Magana contends that DRC, through its agent Campbell, is liable for the negligence that caused Magana's injuries because Campbell "actively participated" in the construction project. We disagree. Active participation is a term of art that describes the level of control necessary to find an employer liable for its contractor's actions. In this case, DRC and its agent Campbell are the employer while Circle T and its agent Alexander are the contractor as those terms are used in applying the active participation standard.[4]

¶ 22 "Utah adheres to the general common law rule that 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.' "[5] "This general rule recognizes that one who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented."[6] By the rule's plain language, the scope of the rule is limited to circumstances in which the direct act or omission of the contractor, not the employer, causes an injury.

¶ 23 Despite the general non-liability rule, the employer of a contractor remains liable for the contractor's actions when the employer " 'participate[s] in or control[s] the manner in which the contractor's work is performed,' and therefore 'owes [a] duty of care concerning the safety of the manner or method of performance implemented.' "[7] This exception to the general non-liability rule is called the retained control doctrine, and it is applied narrowly in " *'unique circumstance[s]* where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care.' "[8]

¶ 24 In determining whether an employer exercised sufficient control to create liability under the retained control doctrine, we apply the active participation standard.[9] Under that standard, an employer has a duty to ensure the safety of its contractor's work where the employer "actively participates" in the contractor's work.[10] An employer actively participates if the employer " 'directs that the contracted work be done by use of a certain mode or otherwise inter-

---

3. *Massey v. Griffiths,* 2007 UT 10, ¶ 8, 152 P.3d 312.

4. For purposes of the general non-liability rule, the terms "employer" and "independent contractor" are used generally. For example, the term "employer" could mean an owner who hires a contractor to oversee the construction of a building, in which case the contractor would be considered the "independent contractor." The term "employer" could also mean a contractor who hires a subcontractor to complete a specific part of the construction, in which case the subcontractor would be the "independent contractor." In the current case, the employer is DRC and the contractor is Circle T.

5. *Thompson v. Jess,* 1999 UT 22, ¶ 13, 979 P.2d 322 (quoting Restatement (Second) of Torts § 409 (1965)).

6. *Id.*

7. *Begaye v. Big D Constr. Corp.,* 2008 UT 4, ¶ 8, 178 P.3d 343 (alterations in original) (quoting *Thompson,* 1999 UT 22, ¶ 13, 979 P.2d 322).

8. *Id.* ¶ 8 (quoting *Thompson,* 1999 UT 22, ¶ 15, 979 P.2d 322).

9. *Id.* ¶¶ 8–9.

10. *Thompson,* 1999 UT 22, ¶ 19, 979 P.2d 322.

feres with the means and methods by which the work is to be accomplished.' " [11] In contrast, an employer does not actively participate in an activity when the employer merely exercises " 'a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.' " [12]

¶ 25 Accordingly, the retained control doctrine and the accompanying active participation standard establish a two-step analysis. The first step is to determine whether the employer actively participated in the contractor's work and, therefore, had a limited duty of care to ensure that the work was conducted safely. When an employer actively participates, the next step is to determine whether the employer breached that duty of care.

¶ 26 Magana asserts that DRC is liable for Magana's injuries because Campbell actively participated by: (1) snapping the lines for the walls and determining where to place them; (2) deciding with Circle T where to off-load the lumber shipped to the site; (3) hiring the crane company that assisted in the off-loading; (4) bearing responsibility for on-site safety; and (5) directly participating in rigging the load of truss joists that fell on Magana. The first three facts that Magana relies upon fail to meet the active participation standard because they exceed the scope of the injury-causing activity. The fourth fact fails to meet the standard because a duty over general on-site safety cannot establish active participation. Finally, the fifth fact fails to meet the standard because it does not demonstrate that Magana retained control over the means and methods of rigging the trusses.

### A. Scope of the Injury–Causing Activity

¶ 27 Under the retained control doctrine, an employer is liable for the actions of an independent contractor when the employer exerts sufficient control over the independent contractor "such that [the contractor cannot] 'carry out *the injury-causing aspect of the work*' in its own way." [13] An aspect of the work constitutes an injury-causing aspect when the aspect is a legal cause of the plaintiff's injuries. An event is the legal or proximate cause of the plaintiff's injury when the event " 'in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury.' " [14]

¶ 28 Magana was injured when a load of trusses slipped from their straps and fell from the crane that was carrying them, landing on Magana. The rigging process involved strapping the load of trusses to the crane. Neither Campbell's snapping the lines for the walls and determining where to place them, his deciding with Circle T where to off-load the lumber shipped to the site, nor his hiring the crane company that assisted in the off-loading was the legal cause of Magana's injuries. Each of the above listed activities occurred prior to the rigging of the load of trusses, which rigging constituted an efficient intervening cause of Magana's injuries. Further, Magana fails to offer any explanation or theory as to how any of the above stated actions relate to off-loading the trusses. Accordingly, each falls outside the scope of the injury-causing aspect of Circle T's work and, therefore, fails to show that DRC, through Campbell, actively participated in the process.

### B. General Responsibility for On–Site Safety

¶ 29 Only Campbell's general responsibility for on-site safety spanned the

11. *Begaye*, 2008 UT 4, ¶ 9, 178 P.3d 343 (emphasis omitted) (quoting *Thompson*, 1999 UT 22, ¶ 19, 979 P.2d 322).

12. *Thompson*, 1999 UT 22, ¶ 20, 979 P.2d 322 (quoting Restatement (Second) of Torts § 414 cmt. c (1965)).

13. *Begaye*, 2008 UT 4, ¶ 11, 178 P.3d 343 (emphasis added) (quoting *Thompson*, 1999 UT 22, ¶ 21, 979 P.2d 322).

14. *Mitchell v. Pearson Enters.*, 697 P.2d 240, 245–46 (Utah 1985) (quoting *State v. Lawson*, 688 P.2d 479, 482 n. 3 (Utah 1984)).

period during and after the load was rigged. Yet we have held that a general obligation to oversee safety on a project "does not equate to exerting control over the method and manner of the injury-causing aspect of [the subcontractor's] work."[15] The same is true even where the general contractor has closely monitored on-site safety.[16] In support of this rule, we have noted that "[p]enalizing a general contractor's efforts to promote safety and coordinate a general safety program among various independent contractors at a large jobsite hardly serves to advance the goal of work site safety."[17] Therefore, Campbell's general responsibility for on-site safety does not amount to actively participating in an injury-causing aspect of the work.

### C. Retaining Control of the Means and Methods of the Work

¶ 30 Finally, Magana asserts that DRC is liable for Magana's injuries under the retained control doctrine because Campbell actively participated by assisting Alexander in rigging the load of truss joists that fell on Magana. We disagree.

¶ 31 Under the retained control doctrine, the employer must " 'direct[ ] that the contracted work be done by use of a certain mode or otherwise interfere[ ] with the means and methods by which the work is to be accomplished.' "[18] In other words, this standard requires that an employer "exert such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way."[19] Thus, the question of whether an employer actively participated is not simply whether an employer participated in an injury-causing activity, but whether the employer controlled the means and methods by which the injury-causing activity was performed.[20]

¶ 32 As we noted in an earlier decision, the Arizona Supreme Court's decision in *Lewis v. N.J. Riebe Enterprises, Inc.*[21] illustrates the degree of control necessary to meet the active participation standard.[22] In *Lewis,* a general contractor ordered a subcontractor to reinstall a roof using a different method than that generally used by the subcontractor.[23] The contractor's method was faster but less safe than that normally used by the subcontractor.[24] Employing the new method resulted in numerous sheets of plywood lying unfastened on top of the roof's beams.[25] One of the subcontractor's employees later stepped on one of the loose sheets and fell through the roof.[26] The Arizona Supreme Court held that, under these facts, the contractor interfered with the subcontractor's normal method of performing the work and, therefore, was subject to retained control liability.[27] We agreed and held that this was the degree of control necessary to meet our active participation standard.[28]

¶ 33 Applying this standard to the case at hand, we affirm the court of appeals' conclusion that Campbell did not actively participate in rigging the load of trusses.

¶ 34 The undisputed evidence shows that Circle T, through its agent Alexander, controlled the off-loading process. Alexander

15. *Begaye,* 2008 UT 4, ¶ 5 n. 2, 178 P.3d 343; *see also Thompson,* 1999 UT 22, ¶ 24, 979 P.2d 322 (refusing to find an employer liable for the acts of an independent contractor where the extent of the employer's control "amounted merely to control over the desired result" of a project).

16. *Begaye,* 2008 UT 4, ¶ 11 n. 4, 178 P.3d 343.

17. *Id.* (quoting *Martens v. MCL Constr. Corp.,* 347 Ill.App.3d 303, 282 Ill.Dec. 856, 807 N.E.2d 480, 490 (2004)).

18. *Id.* ¶ 9 (emphasis omitted) (quoting *Thompson,* 1999 UT 22, ¶ 19, 979 P.2d 322).

19. *Thompson,* 1999 UT 22, ¶ 21, 979 P.2d 322.

20. *Id.* ¶ 20 (quoting Restatement (Second) of Torts § 414 cmt. c (1965)).

21. 170 Ariz. 384, 825 P.2d 5, 7–8 (1992).

22. *Thompson,* 1999 UT 22, ¶ 22, 979 P.2d 322.

23. *Id.* (citing *Lewis,* 825 P.2d at 7–8).

24. *Id.*

25. *Id.*

26. *Id.* (citing *Lewis,* 825 P.2d at 7–8).

27. *Id.* ¶ 23 (citing *Lewis,* 825 P.2d at 14–15).

28. *See id.* ¶¶ 22, 24.

decided where to place the truss joists and was solely responsible for the method and means used to off-load the trusses. Both Campbell and Alexander testified that, even if Campbell helped rig the second load, he did not direct, instruct, or control the manner in which Circle T conducted the operation. Magana did not contest their testimony. Rather, he suggests that by participating in rigging the second load, Campbell actively participated in off-loading the trusses. However, participation alone is not sufficient to show active participation for purposes of the retained control doctrine. Because Magana failed to offer any testimony or other evidence supporting a claim that Campbell directed or controlled the manner in which Circle T off-loaded the trusses, his argument fails.

¶ 35 In sum, the court of appeals correctly held that DRC, through Campbell, did not actively participate for purposes of the retained control doctrine in off-loading the trusses when he determined where to place the walls, snapped the lines to mark the location of the walls, hired the crane company, decided with Circle T where to place the trusses, bore responsibility for on-site safety, or helped Alexander rig the second load of trusses. Each of these activities either exceeds the scope of the injury-causing activity or fails to show that DRC exercised sufficient control over Circle T's work. Accordingly, DRC did not owe Magana a duty to ensure that Circle T conducted the off-loading process safely and is not liable under the retained control doctrine for Magana's injuries.

## II. THE RETAINED CONTROL DOCTRINE DOES NOT IMMUNIZE A CONTRACTOR FROM ITS OWN NEGLIGENT ACTS

¶ 36 We now turn to Magana's direct negligence theory. Although the court of appeals

correctly held that Campbell's assistance in rigging the second load of trusses did not constitute retaining control of the subcontractor's actions, the court erred in affirming the dismissal of Magana's negligence claim. The court made this error because it only considered Magana's negligence claim under the retained control doctrine. The court failed to separately consider Magana's claim under the direct negligence theory that Magana also advanced.

¶ 37 The retained control doctrine is separate and distinct from a direct negligence theory. Specifically, the retained control doctrine does not apply when a plaintiff alleges that an employer's own actions were negligent. Rather, the doctrine is limited to circumstances where the plaintiff alleges that the employer of a contractor is liable for the *contractor's negligence* because the employer retained sufficient control over the contractor's actions to owe the plaintiff a duty of care regarding the contractor's actions.[29] Likewise, the common law general non-liability rule only recognizes that employers are not liable for the actions of their contractors.[30] The rule does not speak to an employer's liability for its own actions.[31]

¶ 38 Once an employer goes beyond mere direction or control of the contractor's work and directly acts in such a way that causes an injury, the employer may be liable for its own direct negligence. It is not a defense that the employer was conducting the work of the independent contractor when the employer caused the injury. Simply because an employer submits to the means and methods chosen by the contractor does not change the fact that the employer remains the contractor's employer. If while assisting the contractor the employer were to decide to change the means and methods of the work, the employer would be at liberty to do

---

**29.** *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 8, 178 P.3d 343.

**30.** *Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (" '[T]he employer of an independent contractor is not liable for physical harm caused to another *by an act or omission of the contractor* or his servants.' " (emphasis added) (quoting Restatement (Second) of Torts § 409 (1965))).

**31.** *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts 510 (1984) ("Quite apart from any question of vicarious responsibility, the employer may be liable for any negligence of his own in connection with the work to be done.").

so.[32] Accordingly, we conclude that an employer remains liable for its own direct actions, even if the employer is assisting its contractor and acting according to the means and methods that the contractor has prescribed.

¶ 39 Magana testified that he observed Campbell and Alexander both rigging the load of trusses that subsequently slipped and fell on Magana.[33] DRC accepts this fact as true for purposes of its summary judgment motion. Whether Campbell indeed assisted in the rigging of the load of trusses that slipped and fell on Magana is a question of fact regarding Campbell's direct negligence. Accordingly, the court of appeals erred in affirming the district court's grant of summary judgment.

## CONCLUSION

¶ 40 The court of appeals correctly held that DRC, through its agent Campbell, did not retain control of the off-loading of the truss joists by determining where to place the walls of the restaurant, deciding with Circle T where to off-load the lumber on-site, hiring the crane company that assisted in the off-loading, bearing responsibility for on-site safety, and directly participating in rigging the second load of truss joists. In each instance, Magana's claims either exceeded the scope of the injury-causing aspect of Circle T's work or failed to meet the active participation standard. But the active participation standard does not apply to Magana's direct negligence theory. By asserting that Campbell himself negligently rigged the truss joists, Magana's negligence claim ex-

ceeds the scope of the retained control doctrine because the assertion relates to Campbell's acts, and not the acts of Circle T. Further, Magana's testimony that he witnessed Campbell rig the second load is sufficient to create a factual issue as to direct negligence. Therefore, we reverse the court of appeals' decision and remand this case to the district court for further proceedings consistent with this opinion.

¶ 41 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

---

**32.** *See, e.g., Thompson,* 1999 UT 22, ¶¶ 22–23, 979 P.2d 322.

**33.** DRC contends that Magana's testimony regarding Campbell rigging the trusses is inconsistent and should, therefore, be disregarded. We disagree.

In *Webster v. Sill,* we explained that "when a party takes a clear position in a deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." 675 P.2d 1170, 1172–73 (Utah 1983).

Magana's deposition testimony was unclear and his subsequent affidavit provided a sufficient

explanation of the discrepancy. In his deposition, Magana first testified that he saw someone helping Alexander rig the second load, and then changed his testimony by stating he was not sure whether he saw someone helping. This inconsistency within the testimony itself suggests that his position was unclear. During cross-examination, Magana modified his statement by stating that someone did help Alexander rig the second load. In a subsequent affidavit, Magana explained that in regard to his answer that he was not sure whether he saw someone help rig the load, there was either a mis-translation or he had misunderstood the question. Under *Webster* this is a sufficient explanation of the discrepancy such that we decline to disregard Magana's testimony.