2003 UT App 379

Dennis V. SPENCER and Linda S. Spencer, Plaintiffs and Appellants,

v.

PLEASANT VIEW CITY, a Utah municipality; Cherrywood Manor, Inc., a Utah corporation; Cherrywood Manor Home Owners Association, Inc., a Utah corporation; and John and Jane Does I–XX, individual defendants in their private capacities, Defendants and Appellees.

No. 20010927–CA.

Court of Appeals of Utah.

Nov. 6, 2003.

Matthew Hilton, Dexter & Dexter, Orem, for Appellants.

Jody K. Burnett, Williams & Hunt and Lowell Smith, Smith & Glauser, Salt Lake City, for Appellees.

Before BILLINGS, A.P.J., JACKSON, P.J., and THORNE, J.

OPINION (For Official Publication)

BILLINGS, Associate Presiding Judge:

¶ 1 Plaintiffs Dennis and Linda Spencer (the Spencers) appeal the trial court's denial of their motion for partial summary judgment and grant of summary judgment in

favor of Defendant, the City of Pleasant View (the City). We affirm.

## BACKGROUND

¶ 2 The Spencers own two parcels of real property located in the City identified as the East parcel and the West parcel. The Spencers and the City have had a number of disputes over the City's requirements for the Spencers to develop their property as building lots. The Spencers allege the City has violated their civil rights by revoking previously granted variances, refusing to issue building permits, and improperly limiting their use of a private right-of-way.

¶ 3 The Spencers obtained the subject property in 1971. The Spencers received a non-exclusive right-of-way for ingress and egress, utility installation, and maintenance south of their property. The Spencers conveyed the eastern half of the West parcel to John and Lola Parker (the Parkers) in 1983.[1] On July 11, 1983, the Board of Adjustment (the Board) granted the Parkers a variance to build on the West parcel with the following conditions: (1) the building lot be 20,000 square feet without consideration of the right-of-way; (2) the buildings be set back at least thirty feet from the edge of the right-of-way; (3) the Parkers provide an engineer's design to the City showing cuts for utilities, grades for roads, and the design of the right-of-way for future development in the area; (4) the City secure an opinion from the City Attorney as to whether the City can control any future requests for variances on undedicated roads if they grant this variance; and (5) should any future development be made, the Parkers must participate in hard surfacing the road, curb and gutter, and sidewalks.

¶ 4 As required, the City Attorney advised the Board that dividing the original property into parcels without compliance with the City's subdivision ordinance made the sale of lots unlawful and that the Board could not approve the Parkers' request without requiring compliance with the subdivision ordinance. Thus, because the variance condition requiring a favorable opinion by the City

Attorney was not satisfied, the City refused to issue the Parkers a building permit. However, months later, counsel for the City Planning Commission issued an opinion indicating that the sale of property by the Spencers to the Parkers did not constitute a subdivision and thus would not be subject to the City's subdivision ordinance. Based upon this conclusion by its counsel, the City Planning Commission voted on March 20, 1984 to allow the Parkers to obtain a building permit. However, the Parkers waited almost ten years before applying for a building permit. On February 8, 1993, the City refused to issue the Parkers a building permit on the grounds that the surrounding property had changed, that ten years is not a reasonable time to wait to develop after receiving a variance, and that none of the required conditions was met.

¶ 5 On March 31, 1986, the Board granted the Spencers a variance to build on the East parcel subject to similar requirements as were placed on the West parcel. However, the Spencers did not take action to obtain a building permit until 1995, at which time the Spencers applied to the Board for a renewal of the 1986 variance. On May 19, 1995, counsel for the City returned the Spencers' application along with a letter explaining that even though the City's zoning ordinance permitted special exceptions, the City had not adopted standards upon which a special exception may be granted. Thus, counsel concluded, the Board is without authority to grant special exceptions. Further, the letter stated the action taken over eight years ago by the Board has no bearing on what the current Board may or should do.

¶ 6 At a hearing on July 16, 1998, the Board denied the Spencers request for "[a]pproval for a lot or lots, not having frontage on a street as required by the zoning title for the zone in which the subdivision is located, but upon a right-of-way." The Board found (1) the Spencers failed to present evidence to indicate that the proposed subdivision was in the best interests of the public welfare and development of the neighborhood as required by the City's subdivision ordinance; and (2) there were no physical restrictions that would obstruct the building of a dedicated

---

1. The Spencers later reacquired the entire West parcel.

public street on the Spencers' property in conformance with the subdivision ordinance.

¶ 7 On August 7, 1998, the Spencers initiated this action claiming, inter alia, several state and federal constitutional violations and slander of title. In May 1999, the Spencers sought partial summary judgment for their constitutional claims involving the City's failure to issue building permits for both parcels of land after revoking the previous variances for each parcel. In an attempt to resolve the dispute, the City offered the Spencers two building permits, and in December 1999, filed a motion for summary judgment on all remaining claims. In October 2000, the trial court granted the City's motion for summary judgment and denied the Spencers' motion for partial summary judgment. The Spencers filed a motion to revise summary judgment, and in the accompanying memorandum argued, inter alia, that they were entitled to attorney fees under 42 U.S.C. § 1988 (2002). In September 2001, the trial court upheld its previous summary judgment ruling and denied the Spencers' request for attorney fees. The Spencers appeal.

### ISSUE AND STANDARD OF REVIEW

¶ 8 The Spencers argue the trial court erred in dismissing various state and federal constitutional claims against the City, and in dismissing their claim for attorney fees. "Summary judgment is proper solely in cases in which no genuine issues of material fact exist and the movant merits judgment as a matter of law. We accord no deference to the trial court's legal conclusions, reviewing them for correctness." *Smith Inv. Co. v. Sandy City,* 958 P.2d 245, 251 (Utah Ct.App. 1998).

### ANALYSIS

#### I. Attorney Fees

¶ 9 The Spencers argue they are entitled to attorney fees as "prevailing par-

ties" on their federal constitutional claims for equitable relief.[2] Under federal law, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 of this title, [under which the Spencers brought their federal claims against the city,] . . . the [trial] court, in its discretion, may allow the *'prevailing party'* . . . a reasonable attorney[] fee." 42 U.S.C. § 1988 (2002) (emphasis added). A party can "prevail" for § 1988 purposes only where there is a "judicially sanctioned change in the legal relationship of the parties," as with "enforceable judgments on the merits and court-ordered consent decrees." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 604–05, 121 S.Ct. 1835, 1840, 149 L.Ed.2d 855 (2001).

¶ 10 Before the trial court, the Spencers claimed the City violated the Constitution by refusing to issue certain building permits. In a written order, the trial court declared those claims "moot" because the City offered to issue the permits. The Spencers classify this "judicial acknowledgment" of the City's offer as a "court-ordered change in the legal relationship" between the Spencers and the City entitling the Spencers to attorney fees.

¶ 11 We disagree. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon,* 532 U.S. at 605, 121 S.Ct. at 1840. In *Buckhannon,* the plaintiff alleged that West Virginia state law infringed upon two federal statutes. *See id.* at 601, 121 S.Ct. at 1838. After the lawsuit began, the West Virginia Legislature enacted two bills removing the state law's questionable language. *See id.* In response to the state's motion to dismiss, the trial court found that the subse-

---

**2.** The Spencers' nonequitable federal claims are irrelevant to this argument, since the trial court dismissed them on primarily substantive grounds and the Spencers request their reinstatement on appeal. Thus, the Spencers could not have yet "prevailed" on those claims.

Further, although "attorney fees may also be claimed by a party under the theory that the party succeeded on a non-[federal] claim 'pen-

dent to a substantial constitutional claim and which arises from a "common nucleus of operative fact," ' " the Spencers "ma[ke] no such claim here." *Call v. City of West Jordan,* 788 P.2d 1049, 1053 n. 4 (Utah Ct.App.1990) (citations omitted). Thus, for instance, the Spencers' reference to $1,260.00 offered by the City is irrelevant, since this offer was in response to a state law claim.

quent legislation *mooted* the plaintiff's federal claims. *See id.* The Supreme Court found these facts insufficient to grant the plaintiff "prevailing party" status and refused to allow attorney fees.[3] *See id.* at 605, 121 S.Ct. at 1840; *see also New York State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n,* 272 F.3d 154, 157–59 (2d Cir.2001) (concluding, in a post-*Buckhannon* decision, that where the trial court noted in a memorandum and order that a reciprocity agreement "mooted the [relevant] litigation," the lawsuit "did not result in a judicially sanctioned change in the legal relationship of the parties," so as to require a reversal of a § 1988 award of attorney fees).

¶ 12 In their reply brief, the Spencers point to a post-*Buckhannon* Eleventh Circuit opinion concluding that "even absent the entry of a formal consent decree, [where] the [trial] court ... incorporates the terms of a settlement into its final order of dismissal," it confers "prevailing party" status on the plaintiff. *American Disability Ass'n, Inc. v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir. 2002). However, this is "because the plaintiff thereafter may return to court to have the settlement enforced." *Id.* In *American Disability,* the trial court "not only specifically approved, adopted and ratified the parties'

settlement, but also expressly retained jurisdiction to enforce its terms." *Id.* at 1320–21 (quotations omitted). Here, however, the trial court did not approve, adopt, or ratify the City's offer in any official manner, nor did it retain jurisdiction.

¶ 13 The City in this case voluntarily offered to issue the permits to the Spencers after commencement of the lawsuit, and the trial court's acknowledgment in its order that the City's actions mooted the Spencers' equitable claims is insufficient to warrant attorney fees.

 ¶ 14 In sum, the Spencers are not "prevailing parties" under 42 U.S.C. § 1988 (2002).[4] Therefore, we uphold the trial court's denial of attorney fees.

## II. Federal Due Process Claims

 ¶ 15 The Spencers next argue their federal substantive and procedural due process[5] claims for damages against the City should have survived summary judgment. We disagree since we conclude the Spencers failed to demonstrate a protected property interest under 42 U.S.C. § 1983 (1999).

 ¶ 16 To state a valid substantive or procedural due process claim under § 1983,[6]

3. The *Buckhannon* Court specifically held that the " 'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," is not a proper basis for attorney fees. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 601, 610, 121 S.Ct. 1835, 1838, 1843, 149 L.Ed.2d 855 (2001). Although the Court did not directly address whether the trial court's decision mooting the plaintiff's claim was in itself a sufficient "judicial imprimatur," *id.* at 605, 121 S.Ct. at 1840, the Court refused attorney fees under those facts and, in addressing the policy implications of its decision, noted that "it is not [even] clear how often courts will find a case mooted[, as here]." *Id.* at 609, 121 S.Ct. at 1842.

4. Contrary to their position regarding attorney fees, the Spencers argue their equitable relief claims under federal law are not moot. First, the Spencers insist the City has not met its "heavy burden" to show its allegedly wrongful conduct cannot reasonably be expected to recur. We find the Spencers did not adequately brief this issue. *See State v. Thomas,* 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that

are not adequately briefed."). Second, in their opening brief, the Spencers cite to the record where, at an earlier date, they claimed that they had not yet received the permits. In their reply brief, the Spencers coyly state that "[n]either Spencers nor the [C]ity have claimed on appeal that the building permits have been issued." Thus, since the Spencers do not actually argue that the permits were not issued as of the date of the Spencers' opening and reply briefs, we do not consider any argument that the Spencers' claims are therefore not moot.

5. It is unclear from the Spencers' brief whether they intended to appeal the denial of their equal protection claim. Thus, we refuse to consider it. *See State v. Thomas,* 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed.").

6. The Spencers presumably brought all of their federal constitutional claims against the City pursuant to 42 U.S.C. § 1983 (1999). Although the Spencers' complaint makes scant reference to § 1983, both parties and the trial court have treated these claims as § 1983 claims, and the

the Spencers " 'must first allege sufficient facts to show a property ... interest warranting due process protection.' " *Patterson v. American Fork City*, 2003 UT 7,¶ 23, 67 P.3d 466 (quoting *Crider v. Board of County Comm'rs*, 246 F.3d 1285, 1289 (10th Cir. 2001)). To have "a valid property interest in a state-created right, a plaintiff 'must have more than a unilateral expectation of it;' instead, the plaintiff must have a 'legitimate claim of entitlement to it.' " *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ ¶ 17 "Many courts have held that adverse municipal land-use decisions are not actionable under § 1983 because a developer does not typically have a claim of entitlement to a favorable decision." *Id.* at ¶ 24. For example, in *Patterson*, the Utah Supreme Court noted

> a municipality's rejection of a developer's proposal does not always amount to a violation of section 1983 because every planning dispute "necessarily involves some claim that the [municipality] exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."

*Id.* at ¶ 25 (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982)). Additionally, "absent invidious discrimination, such as proof of racial animus, the 'conventional planning dispute ... is a matter primarily of concern to the state and does not implicate the Constitution.' " *Id.* (quoting *Creative Environments, Inc.*, 680 F.2d at 833).

■ ¶ 18 The Spencers have not alleged invidious discrimination by the City. Rather, the Spencers argue their original variances warrant federal protection in that "[v]ari-

ances run with the land," Utah Code Ann. § 10–9–707(4) (1998), and are not subject to revocation. This argument is merely a " 'conventional planning dispute.' " *Patterson*, 2003 UT 7 at ¶ 25 (quoting *Creative Environments, Inc.*, 680 F.2d at 833). Further, the Spencers have not identified a protected property interest to which they are entitled. While the Spencers and the Parkers obtained variances to build on their properties, neither sought to build until nearly ten years after the variances were granted. We have "uncovered no authority that suggests a property owner has a vested property right in a contemplated development or subdivision." *Marshall v. Board of County Comm'rs*, 912 F.Supp. 1456, 1464 (D.Wyo.1996). Moreover, the Spencers' argument, taken to its logical conclusion, would allow property owners who fail to act for many years on a granted variance to frustrate a city's ability to update its land use regulations.

¶ 19 The Spencers' case "involves disputes about specific local development issues, not about the deprivation of constitutional rights." *Patterson*, 2003 UT 7 at ¶ 28. "Whatever unfairness [the Spencers] may have experienced, nothing in the facts presented sounds constitutional alarm bells." *Id.* at ¶ 28.[7] Thus, we conclude the Spencers failed to establish a property interest protected under 42 U.S.C. § 1983, and therefore the trial court properly granted summary judgment in favor of the City.

### III. Federal Takings Claim Inadequately Briefed

■ ¶ 20 The Spencers' federal takings claim is inadequately briefed, and we refuse to consider it. "It is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998).

> In deciding whether an argument has been adequately briefed, we look to ... rule

Spencers do not assert any authority other than § 1983 for bringing such claims.

**7.** We limit our holding to the specific facts of this case. We cannot say there will never be a case

in which an adverse municipal land use decision against a developer rises to the level of a constitutional violation. However, the facts of this case do not warrant constitutional protection.

24(a)(9) of the Utah Rules of Appellate Procedure[, which] states that the argument in the appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes and parts of the record relied on." Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.... [T]his court is *not a depository in which the appealing party may dump the burden of argument and research.*

*Id.* at 305 (citations omitted) (emphasis added).

¶ 21 Incorrectly labeling their claim as "substantive due process," the Spencers inadequately assert a federal "taking" without just compensation. In cursory fashion, the Spencers argue that a platting error by the City, regarding a right-of-way owned by the Spencers limiting use of that right-of-way, involved a private rather than public use. Aside from a one sentence quotation to a 1937 takings case, the Spencers cite no case law describing or supporting their claim. There is no reasoned analysis or factual development supporting any legal claim for damages, thus "dump[ing] the burden of argument and research" on this court. *Id.* (quotations and citation omitted). Similarly, the Spencers claim the City's "actions were not related to [its] rationale proffered for conduct." However, the Spencers make no mention of damages or constitutional remedies. The Spencers reference several instances of the City's conduct regarding the Spencers' development attempts without any meaningful discussion of these facts or reasoned analysis as to why the City's conduct amounts to a constitutional taking. Citing one regulatory takings case, the Spencers superficially claim the facts are similar to this case, with no further analysis or mention of the elements of a regulatory takings. Therefore, the federal takings claim fails.[8]

## IV. Slander of Title

¶ 22 The Spencers argue that their slander of title claim against the City should have survived summary judgment. The trial court dismissed this claim because, inter alia, the Spencers failed to establish a "factual or legal basis" for their assertions. The Spencers do not argue a cognizable claim on appeal, and we therefore affirm the trial court's ruling.

¶ 23 "To prove slander of title, a claimant must [show] that (1) there was a publication of a slanderous statement disparaging [the] claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages." *First Sec. Bank of Utah v. Banberry Crossing*, 780 P.2d 1253, 1256–57 (Utah 1989). In their brief, the Spencers refer to "collective city statements" that "denigrated the validity of Spencers' real property," but do not provide any details about those statements or how they satisfy the first element. For the second element, the Spencers assert in conclusory fashion that the City's statements "were false." In asserting malice, the Spencers cite the standard but do not apply it to the facts, arguing only that, "taken in context," the statements were malicious. The Spencers also inadequately argue special damages. Thus, the Spencers' slander of title claim fails.

## CONCLUSION

¶ 24 We conclude the Spencers are not entitled to "prevailing party" attorney fees. Further, the Spencers fail to articulate any legitimate constitutional claims against the City. The Spencers' slander of title claim also fails. Therefore, we affirm.

¶ 25 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

8. The Spencers' cursory and conclusory arguments that the City violated Article 1, Section 7; Article 1, Section 22; and Article XI, Section 5 of the Utah Constitution also fail for inadequate briefing.