IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Brian W. Carter and Megan B. Carter, | ) | OPINION |
| | ) | |
| Plaintiffs and Appellees, | ) | Case No. 20100478-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Steve Done; Clara Done; Rock Hard | ) | (March 15, 2012) |
| Construction, Inc.; Anderson | ) | |
| Excavating, Inc.; and John Does 1–10, | ) | 2012 UT App 72 |
| | ) | |
| Defendants and Appellants. | ) | |
| | ) | |

-----

Second District, Layton Department, 040602416
The Honorable Thomas L. Kay

Attorneys:     Brad C. Smith and David B. Stevenson, Ogden, for Appellants
              Edwin S. Wall, Salt Lake City, for Appellees

-----

Before Judges McHugh, Thorne, and Christiansen.

THORNE, Judge:

¶1     Steve and Clara Done appeal from the district court's judgment against them and in favor of Brian W. and Megan B. Carter. The Carters had sought the removal of fill dirt that had been placed on their property during construction on the Dones' adjacent lot. The district court balanced the equities between the parties and awarded the Carters $25,000 in damages in lieu of an injunction requiring the Dones to remove the dirt. We affirm.

BACKGROUND

¶2    The Carters and the Dones own adjacent residential lots in the foothills of North Salt Lake, and both parties began constructing homes on their respective lots in late 2003. Both lots were sharply sloped. The Carters raised the level of their lot with fill dirt, and to retain the dirt they constructed a concrete retaining wall running parallel to the property line between their lot and the Dones'. The wall was constructed on the Carters' property, four feet inside the property line.

¶3    Shortly thereafter, Rock Hard Construction, Inc. (Rock Hard) began construction of the Dones' home on their lot. The Dones also desired to raise the level of their lot, and to this end, Rock Hard subcontracted with Anderson Excavating, Inc. (Anderson) to perform excavation and grading and to prepare the property for construction. The Dones had not arranged for any type of retaining wall to keep their additional fill dirt off of the Carters' property. Nevertheless, in January 2004, Rock Hard arranged for fill dirt to be delivered to and spread out across the Dones' property. During this process, the fill dirt, consisting of soil, rock, and boulders, was pushed up flush against the Carters' retaining wall, burying the wall and the four-foot strip of the Carters' land that lay between the wall and the property line. Dirt and rocks from the Dones' lot were also moved onto the back of the Carters' lot, where the material pushed up against a wall of the Carters' partially-constructed home. Who exactly directed that the dirt be moved onto the Carters' property, and the degree of knowledge or involvement that the Dones personally had in regard to those actions, were issues of dispute between the parties.

¶4    When the Carters discovered the dirt on their property, they sued the Dones, Rock Hard, and Anderson, alleging multiple causes of action and seeking damages and injunctive relief. In September 2004, the district court conducted a hearing on the Carters' request for a temporary injunction, at which the parties reached an agreement that the defendants would remove the dirt from the rear of the Carters' lot so that the Carters could get their home inspected and approved.[1] The dirt at the rear of the

---

[1]It is unclear whether the parties' agreement addressed only the dirt in the rear of the Carters' lot or whether it also encompassed the dirt against the retaining wall.

(continued...)

Carters' lot was removed in December 2004. The four-foot wide column of dirt against the Carters' retaining wall was not removed, and the Dones finished the construction of their home using the trespassing dirt as lateral support for the fill dirt on their property.

¶5    In 2006, the Carters settled their claims against both Rock Hard and Anderson. They continued their litigation against the Dones, and the district court conducted a bench trial in October 2009. The only issue that the Carters presented at trial was a request for a mandatory injunction against the Dones, requiring them to remove the four-foot column of dirt that remained on the Carters' property. At trial, the Carters sought to establish that the Dones were actively involved in placing the dirt on the Carters' property and should be required to remove it. The Dones disputed their involvement in placing the dirt and presented evidence that, were a mandatory injunction to issue, they would have to tear out a substantial amount of construction on their property in order to comply.

¶6    The district court found that the Dones had not directed the placement of the dirt onto the Carters' property but had nevertheless allowed the dirt to remain there without otherwise retaining their own property. However, in lieu of an injunction, the district court balanced the equities between the parties and determined that the Carters could be adequately compensated with money damages of $25,000. The court stated that it had reached this figure "in the nature of something of unjust enrichment," based on testimony that the Carters' retaining wall had cost $25,000 to construct, that a retaining wall constructed by the Dones would cost at least that much, and that if the Dones "had to dig up the driveway and the RV pad or the side of the garage it . . . could be hundreds of thousands of dollars." The Dones appeal from the district court's $25,000 judgment in the Carters' favor.[2]

_____

[1](...continued)
Neither the temporary restraining order hearing transcript nor any written account of the agreement is part of the record on appeal.

[2]The Carters also initiated a cross-appeal on the ground that the district court had erred by awarding money damages instead of the requested injunction. However, they never filed a cross-appellants' brief pursuing that issue. Instead, their appellees' brief raises the issue conditionally, seeking a remand for the issuance of an injunction only in

(continued...)

ISSUES AND STANDARDS OF REVIEW

¶7      The Dones first argue that they cannot be held liable for trespass against the Carters in light of the district court's factual findings that the Dones themselves did not place dirt on the Carters' property, nor did they direct Rock Hard or Anderson to do so. This issue raises questions of law pertaining to the tort of trespass and the liability of individuals for the tortious acts of their independent contractors. We review such questions for correctness. *See, e.g.*, *Nielsen v. Spencer*, 2008 UT App 375, ¶¶ 10, 12, 196 P.3d 616 (applying a correctness standard to issues that "ask us to interpret and apply the elements of [a] tort").

¶8      The Dones next raise three related arguments arising from the district court's balancing of the equities and award of money damages in lieu of a mandatory injunction. Specifically, the Dones argue that the money damages award constituted a change to the Carters' election of an equitable remedy, that the court awarded damages based on a cause of action—unjust enrichment—that was neither pleaded nor tried, and that the Carters failed to allege or prove the elements of an unjust enrichment claim. These arguments challenge the district court's interpretation and application of the balancing-of-the-equities doctrine, and we review the district court's actions in this regard for an abuse of discretion. *See, e.g.*, *Carrier v. Lindquist*, 2001 UT 105, ¶ 29, 37 P.3d 1112 ("We review the district court's decision not to apply a balancing of equities test for abuse of discretion."); *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1259 (Utah 1975) (stating that where the "balance of injury" test is met, "equity may in its discretion elect not to compel removal").

ANALYSIS

¶9      The Dones' arguments challenge both their liability for trespass against the Carters and the district court's remedy for that trespass. We determine that the Dones

---

    [2](...continued)
the event that the $25,000 judgment is reversed. Because we affirm the district court's damages award, we do not consider the Carters' conditional request for injunctive relief.

have not identified reversible error by the district court on either issue, and we affirm the judgment below.

## I. The Dones' Liability for Trespass

¶10    The Dones' first argument is that they cannot be held liable for trespass because of the district court's factual finding that they did not personally place dirt on the Carters' property or direct Rock Hard or Anderson to place it there.  In light of this finding, the Dones argue that trespass liability can exist only against their contractors, Rock Hard and Anderson.

¶11    We first examine and attempt to interpret the district court's findings.  This task is complicated by the form of the stipulated order adopted by the district court.  Despite the factually intensive nature of both the Carters' action and the district court's ultimate balancing of the equities, the record does not contain formal findings of fact.  Rather, when the Dones objected to the Carters' proposed findings and conclusions, the parties stipulated that the findings of fact would consist of a transcript of the district court's oral ruling.  Thus, we are called upon to extract the district court's factual findings from over eight pages of district court transcript that includes argument from the parties and sometimes ambiguous responses and commentary from the district court.[3]

---

[3]We strongly discourage the practice of relying on a ruling transcript as a substitute for properly drafted findings of fact, at least as that practice was employed in this case. Although the Utah Rules of Civil Procedure allow for oral findings of fact, *see* Utah R. Civ. P. 52(a) ("It will be sufficient if the findings of fact and conclusions of law are stated orally . . . ."), we do not believe that the rules contemplate what occurred here.  The district court's oral ruling was clearly not initially intended to serve as the final reference for the court's findings of fact, and it seems equally clear that the Carters and the Dones had substantially different interpretations of the court's oral ruling.  The proper venue for resolving the parties' disputes over the meaning of the ruling was in the district court, where the court could clarify exactly what it intended to find and rule.  By stipulating to the transcript instead of resolving their interpretation disputes in the district court, the parties have presented us with unclear and ambiguous factual findings with which to sift their appellate arguments.  We determine that we can adequately address the parties' arguments despite the flawed method of preserving the

(continued...)

¶12 Despite the unorthodox nature of the district court's order, we can extract the following factual findings that relate to the district court's decision on liability. The Carters constructed a concrete retaining wall on their property, four feet inside their property line with the Dones. Steve Done had no plan to build a corresponding wall on his property, and while he assumed one would be built, that never happened. Fill dirt was placed on the Dones' property, and a substantial amount of that dirt was moved or spread onto the Carters' property, against the Carters' retaining wall and against the back side of the Carters' house. The dirt against the back of the house was later removed after an agreement was reached by the parties following a temporary injunction hearing.

¶13 The dirt that was up against the Carters' retaining wall, burying the wall and the four-foot strip of the Carters' lot that lay outside of it, was not removed. On the critical question of the Dones' involvement in placing the dirt against the wall and onto the Carters' property, the district court found,

> Done has never retained his property in front. And I don't
> think there's any question, there's no issue of fact before me
> that a—a—you know the evidence before me was that you
> know Anderson Excavating or the contractors, without
> direction of Mr. Done, put the dirt where they put the dirt.
> And although it wasn't Mr. Done who said where the dirt
> would go, he has left it against that, against their wall into
> that four foot of property into the other side or between his
> property and the wall. Those four feet that are still on the
> Carters' property, he's left it there without retaining his
> property. And he's left it there now without ever retaining
> his portion.

The district court also found that, in light of the Dones' subsequent construction, the removal of the dirt would now require "[t]hat we basically move buildings, [and] tear up other things," including the Dones' driveway, RV pad, and garage.

---

[3](...continued)
findings, but that might not be the case in other circumstances, and we strongly encourage the district court to enter clear findings of fact in the future.

¶14    The Dones argue that the district court's finding that their contractors placed the trespassing dirt without their direction precludes a finding of trespass liability against them. We agree with the Dones that generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *See Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 409 (1965). We also agree with the Dones that the district court's factual findings are insufficient to support an application of the "retained control" doctrine, an exception to the general rule that applies where the employer exercises sufficient control over his contractors that he can be held liable for their tortious actions. *See Thompson*, 1999 UT 22, ¶ 15. The retained control doctrine requires the employer's "active participation" in the contractor's actions, *see Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 24, 215 P.3d 143, "such that [the contractor cannot] carry out the injury-causing aspect of the work in its own way," *id.* ¶ 27 (alteration in original) (emphasis and internal quotation marks omitted). Although the Carters assert on appeal that the Dones did retain such control over their contractors, we see nothing in the district court's factual findings to support such a conclusion.

¶15    Thus, under the general rule that employers are not liable for the torts of their contractors, it may be the case that the Dones are not liable for the initial placement of the dirt on the Carters' property.[4] However, the Dones ignore other aspects of the

---

[4]We note that the circumstances of this case might well support liability against the Dones under section 427B of the Restatement (Second) of Torts. That section states,

> One who employs an independent contractor to do work
> which the employer knows or has reason to know to be
> likely to involve a trespass upon the land of another or the
> creation of a public or a private nuisance, is subject to
> liability for harm resulting to others from such trespass or
> nuisance.

Restatement (Second) of Torts § 427B (1965). The district court's findings recognize that the Dones had no plans for a retaining wall on their property, but that they knew that their contractors would be using fill dirt to raise the level of their property. It seems to us that the use of fill dirt without providing for an appropriate retaining wall, at least under the circumstances of this case, constitutes an action "likely to involve a trespass

(continued...)

district court's findings whereby the court determined that the Dones left the trespassing dirt on the Carters' property and failed to ever properly retain their own property. While the Dones may not have had any obligation to remove the dirt from the Carters' property if they were not personally responsible for placing it there, they had no right to pin the trespassing column of dirt in place by using it as lateral support for their own property and construction. Yet, this appears to be exactly what happened.

¶16    The district court made no express finding that the Dones were using the trespassing dirt column as lateral support for their property, but that fact is readily inferred from the district court's finding that the trespassing dirt remains sandwiched between the Carters' wall and the unrestrained fill dirt on the Dones' property. Without a proper retaining wall on the Dones' property, the only thing holding the Dones' fill dirt in place is the column of trespassing dirt. However, not only did the Dones leave their fill dirt in place, they constructed permanent improvements on their filled-in property, relying on the trespassing dirt on the Carters' property to hold their own fill dirt and improvements in place.

¶17    This pinning of the trespassing column of dirt against the Carters' retaining wall constitutes a separate and distinct act of trespass by the Dones that is independent of the trespass committed by their contractors. Utah cases have applied the definition of trespass onto land found in section 158 of the Restatement (Second) of Torts. *See, e.g.*, *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998); *Mueller v. Allen*, 2005 UT App 477, ¶ 35, 128 P.3d 18; *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 41 n.5, 990 P.2d 945. Section 158 provides for trespass liability when a person intentionally "enters land in the possession of [another], or causes a thing or a third person to do so." Restatement (Second) of Torts § 158(a) (1965). "Enters land" is then defined as follows:

> Unless the context otherwise indicates, the phrase "enters
> land" is for convenience used throughout the Restatement of

---

[4](...continued)
upon the land of another." However, Utah case law has not expressly adopted section 427B, *see Poteet v. White*, 2006 UT 63, ¶ 8, 147 P.3d 439, and it was neither argued to nor relied upon by the district court. Accordingly, while we recognize its potential application to the question of the Dones' liability for placing the dirt on the Carters' land, we do not rely on section 427B to establish the Dones' liability in this case.

this Subject to include, not only coming upon land, but also remaining on it, and, in addition, to include the presence upon the land of a third person or thing which the actor has caused to be *or to remain there*.

*Id.* cmt. b (emphasis added).

¶18    We see no way of interpreting the result of the Dones' actions in this case as anything other than their causing the trespassing column of dirt to remain in place on the Carters' property. Thus, regardless of whether the Dones could have been held liable for the initial placement of the dirt, their continuing use of the dirt as lateral support pins it in place and causes it "to remain there," and therefore constitutes a trespass. *See id.* We recognize that the district court did not expressly rely on this part of the definition of trespass in finding the Dones liable. Nevertheless, the district court's findings regarding the Dones' failure to remove the dirt or retain their own property suggest that the court was essentially relying upon this theory to impose liability, particularly in light of its findings that the Dones had not placed the dirt themselves. In any event, the district court's factual findings support the legal conclusion that the Dones continue to trespass against the Carters by causing the trespassing column of dirt to remain in place, and we therefore do not disturb the district court's ultimate conclusion that the Dones were liable for trespass.[5]

## II. The District Court's Balancing of the Equities

¶19    The Dones next raise three interrelated arguments challenging the district court's decision to balance the equities and award $25,000 in damages to the Carters in lieu of

---

[5]The Dones also raise an argument that they could not be held liable to the Carters because the Carters had already been made whole through their undisclosed settlements with both Rock Hard and Anderson. *See generally Dawson v. Board of Educ.*, 118 Utah 452, 222 P.2d 590, 592–94 (1950) (discussing the general rule that full recovery for a tort against one tortfeasor bars further recovery for the same tort against others). However, because the Dones' act of trespass in causing the dirt to remain on the Carters' property is separate and distinct from the contractors' trespass in placing it there in the first place, we see little merit to this argument. We further discuss the effect of the settlements in part II.A of this opinion. *See infra* ¶¶ 23–25.

an injunction.  Each of these arguments is premised on the underlying assumption that the district court actually awarded damages under an unjust enrichment cause of action rather than pursuant to the doctrine of balancing the equities, an assumption that is apparently prompted by the district court's comment that it had calculated the damage award "in the nature of something of unjust enrichment."  We disagree with this assumption and affirm the district court's remedy under the balancing-of-the-equities doctrine.

¶20    The balancing of the equities refers to the "balancing of the opposing parties' interests" that is usually required prior to the granting of a mandatory injunction to remove an encroachment upon property.  *See Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶¶ 31–32, 128 P.3d 1151.  Under the balancing-of-the-equities test, once an encroachment has been established and injunctive relief requiring removal of the encroachment sought,

> the district court may in its discretion elect not to grant an
> injunction only "where an encroachment does not
> irreparably injure the plaintiff; was innocently made; the cost
> of removal would be disproportionate and oppressive
> compared to the benefits derived from it[;] and [the] plaintiff
> can be compensated by damages."

*Carrier v. Lindquist*, 2001 UT 105, ¶ 31, 37 P.3d 1112 (emphasis omitted) (quoting *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1259 (Utah 1975)).

¶21    The district court, in crafting the Carters' remedy against the Dones, expressly referred to *Johnson v. Hermes Associates, Ltd.*, 2005 UT 82, 128 P.3d 1151, and expressly applied the balancing-of-the-equities test.  We are unconvinced by the Dones' attempt to characterize the district court's balancing of the equities as a conversion of the Carters' action for injunctive relief into one for monetary damages under an unjust enrichment cause of action.  The very nature of the balancing-of-the-equities test presupposes that a party seeking injunctive relief might, in the district court's discretion and in limited circumstances, be denied the injunctive relief sought and instead be compensated with money damages.  *See generally Carrier*, 2001 UT 105, ¶ 31.

¶22    The Dones do not raise any arguments on appeal that directly challenge the district court's application of the balancing-of-the-equities test. Nevertheless, the Dones raise two issues in their appellate briefing that apply, at least tangentially, to the district court's balancing of the equities, even though the arguments are cast in terms of challenging an award based on an unjust enrichment claim. These arguments are that the district court's award of damages is barred by Carters' prior settlements with Rock Hard and Anderson, and that the amount of damages awarded by the district court is unsupported by the evidence. Because these arguments have some application to the district court's award based on the balancing of the equities, we address them on their merits.

A.  The Carters' Settlements with Rock Hard and Anderson

¶23    The Dones argue that the district court's award of $25,000 in damages in lieu of injunctive relief constitutes a double recovery for the Carters because the Carters previously entered into settlement agreements with Rock Hard and Anderson. As previously noted, *see supra* ¶ 18 note 5, the Dones' trespass liability for pinning the trespassing dirt in place is separate and distinct from Rock Hard and Anderson's liability for placing the dirt on the Carters' property to begin with. We see no reason that the Carters should not be able to settle for damages against the contractors for placing dirt on their property and also recover damages against the Dones for causing it to remain there. *See generally Dawson v. Board of Educ.*, 118 Utah 452, 222 P.2d 590, 592 (1950) ("Having *a single cause of action* against more than one tort feasor, an injured party may . . . recover judgment or judgments against one or all, but he can have but one satisfaction of the cause of action." (emphasis added)).

¶24    However, even assuming that there could be some overlap between the Dones' liability and that of their contractors, the settlements between the Carters and Rock Hard and Anderson are not in the record, and it would be pure speculation on the part of this court to assume the contents of those settlements. The settlements could have been complete or partial, and the Carters' claims could conceivably have been settled for nuisance value. We simply do not know. And, although the Dones elicited testimony at trial that the prior settlements had occurred, they do not identify on appeal

where in the record they either elicited the amounts of the prior settlements or attempted to do so and were prevented by the district court.[6]

¶25 In sum, the Dones have not convinced us that the Carters' prior settlements with Rock Hard and Anderson preclude or limit the district court's award in this case. The settlements and the damages award appear to be for two separate acts of trespass, and in any event the Dones have failed to establish the amounts of the settlements or present an argument that they were improperly prevented from doing so. Under these circumstances, we decline to disturb the district court's damage award due to the prior settlements.

B. Amount of Damages

¶26 The Dones also challenge the amount of damages awarded by the district court, arguing that the Carters put on no evidence as to the amount of their damages and that the evidence that was presented at trial does not support the $25,000 that the district court awarded. Under the circumstances of this case, we are unconvinced by these arguments.

¶27 As to the Dones' argument that the Carters failed to present evidence of their damages, we observe that the *only* relief sought by the Carters at trial was injunctive relief requiring the Dones to remove the trespassing dirt. It was the *Dones* who successfully persuaded the district court that the Carters could obtain adequate legal

---

[6]The only record citation the Dones have provided us reveals that the Carters did make a relevance objection when Brian Carter was asked whether he had settled his claims against Rock Hard and Anderson. That objection was overruled, and Carter answered, "To some extent." However, the Dones did not then attempt to elicit the amounts of the settlements. Later, during closing arguments, the Dones argued that the Carters' settlements with Rock Hard and Anderson should act as a release for the Dones. The district court responded, "I don't know any of the—the details about that settlement, because there was no discovery done about that, which there clearly could have been done . . . . [S]o, how do I take that into consideration if I know nothing about the terms of the settlement?"

relief through money damages,[7] which led the district court to deny the requested injunction and instead award the Carters damages under the balancing-of-the-equities doctrine.[8]

¶28 Further, in light of our determination that the Dones committed a separate act of trespass by pinning the column of dirt in place on the Carters' property and against their retaining wall, it appears that the Carters were likely entitled to the injunctive relief that they sought. The balancing-of-the-equities doctrine has no application unless a trespass is innocently made. *See Carrier v. Lindquist*, 2001 UT 105, ¶ 31, 37 P.3d 1112 ("[T]he benefit of the doctrine of balancing the equities . . . *is reserved for the innocent defendant*, who proceeds without knowledge or warning that he is encroaching upon another's property rights." (omission in original) (internal quotation marks omitted)). Although the district court made no fact findings on this subject, it is hard to imagine a set of factual circumstances whereby the Dones' actions in pinning the trespassing dirt in place with their construction activities could be deemed innocent even if they had no role in placing the dirt to begin with. The Dones were well aware of the Carters' objections to the trespassing dirt, and yet they effectively precluded the Carters or anyone else from removing the dirt by using it as lateral support for their own property and the construction of their improvements.

---

[7]When the district court announced its ruling, the Dones' counsel inquired, "you're saying that [the Dones are] going to have to pay despite that [the Carters] were requesting for injunctive relief, you're giving damages in the amount of $25,000 to the Carters[?]" The district court responded,

> You convinced me that there was—one of the rulings that I have to make [to award injunctive relief] is that their legal remedies are inadequate. And you told me that legal remedies were adequate. So yes, they came here with that. I did not award that because I said that legal remedies are adequate and this is what the legal remedy is.

[8]The Dones provide no authority or legal analysis as to who bears the burden of proving damages in such a case, and we decline to undertake that analysis on the Dones' behalf. *See generally Spencer v. Pleasant View City*, 2003 UT App 379, ¶ 20, 80 P.3d 546 ("It is well established that a reviewing court will not address arguments that are not adequately briefed." (internal quotation marks omitted)).

¶29    Under these circumstances, the district court likely erred when it denied the Carters their requested injunction because it appears that the Carters presented sufficient evidence to obtain the injunctive relief that they sought.  However, we do not disturb the district court's decision to award damages instead of an injunction because the Carters have not asked for that relief on cross-appeal.[9]

¶30    The Dones ask us to vacate the damages award because the Carters did not present sufficient evidence of damages.  However, the Carters were not seeking an award of damages at all and were likely entitled to the injunctive relief that they did seek.  Further, it was the Dones who persuaded the district court to award damages in lieu of an injunction.  Under these circumstances, we are not persuaded that the damage award must be vacated merely because the Carters did not present evidence to support this unwanted remedy.

¶31    Looking at the record as a whole, we also disagree with the Dones' argument that the record does not contain evidence to support the district court's $25,000 damages award. Generally, when a court balances the equities and awards damages in lieu of enjoining a permanent trespass, the measure of damages is the diminution in property value caused by the trespass.  *See* Richard R. Powell, *Powell on Real Property* § 68.09[2][b], at 68-39 to 68-40 (1998) ("If the court permits a wrongful encroachment to continue, it generally awards permanent damages.  Permanent damages are measured by the diminution in value of the victim's land caused by the trespass.").  The Dones argue that the only evidence of diminution of the Carters' property value came from the Dones' own expert, who testified that the loss in value was $319.  Accordingly, the Dones argue, the Carters' damages should be limited to that amount.

¶32    We disagree that the $319 testimony is the only appropriate evidence of damages in this case.  The district court also found that the Carters had spent $25,000 in constructing their retaining wall,[10] and it seems clear from both the district court's

---

[9]As noted above, the Carters have sought injunctive relief on appeal only as an alternative in the event that the district court's award of monetary damages is not upheld.

[10]On appeal, the Dones assert that Brian Carter's actual testimony was that the wall cost $15,000 to construct, rather than $25,000.  This assertion appears to be correct

(continued...)

ruling and the record on appeal that the Carters' wall remains permanently buried by the trespassing dirt that the Dones have trapped against it. Under these circumstances, where the Dones' actions made it unnecessary for them to construct their own wall, it does not seem unreasonable for the district court to have assessed damages in the amount that it believed the Carters' wall to have cost, $25,000.[11]

¶33    Even if the cost of the Carters' wall was not appropriate evidence of damages in this case, we would not disturb the district court's damages award based on the Dones' arguments. As explained above, it is likely that the Carters were entitled to the injunctive relief that they sought. The district court made a finding on the cost of such an injunction to the Dones, stating that if the Dones "had to dig up the driveway and the RV pad or the side of the garage it . . . could be hundreds of thousands of dollars." Thus, it appears that any error in the district court's assessment of damages against the Dones would be harmless in that the damages awarded were still many thousands of dollars less than the amount the Dones would have to spend to comply with an injunction. And, as a practical matter, if we were to reduce the Carters' damages award then we would be obligated to consider their conditional cross-appellate argument that this matter should remanded for the entry of the requested injunction.

---

[10](...continued)
based on the trial transcript. However, during closing arguments, the Dones' counsel represented to the district court that the Carters' testimony was that the wall cost $25,000 to construct. The district court then relied on the $25,000 figure in its oral ruling without objection by the Dones, and both parties then stipulated to the district court's ultimate finding that the wall cost $25,000 to construct. Under these circumstances, the Dones have failed to preserve an argument that the district court erred by using the $25,000 figure, and they also likely invited any such error.

[11]The district court indicated that it was awarding the $25,000 "in the nature of something of unjust enrichment." This comment does suggest that the district court was basing the $25,000 award on the amount of money that the Dones avoided spending, rather than the amount of damage caused to the Carters. We express no opinion on whether that type of analysis is ordinarily appropriate in a balancing-of-the-equities case. Nevertheless, under the facts of this case, damages for the value of the buried wall seem appropriate.

¶34    In sum, both the circumstances of this case and the manner in which it has been presented to us on appeal are somewhat unique. We nevertheless uphold the district court's damage award. The Dones have not persuaded us that there is any error in the determination of damages, and if they had, then we would need to consider whether the matter should be remanded for further proceedings that would likely result in the entry of a much more costly injunction. However, in light of our analysis above and the Carters' conditional argument on cross-appeal, we elect to simply affirm the district court's award.

CONCLUSION

¶35    We determine that the facts of this case, as found by the district court, adequately support the Dones' personal liability for trespass against the Carters. Although the Dones may or may not be liable for the actual placement of the dirt on the Carters' property, their subsequent and continuing use of the dirt for lateral support of their own property and improvements prevents its removal by the Carters and constitutes a separate trespass for which the Dones are liable. We also determine that the Dones have failed to identify any reversible error in the district court's application of the balancing-of-the-equities doctrine and the resulting $25,000 damages award. For these reasons, we affirm the judgment of the district court.

_____
William A. Thorne Jr., Judge

-----

¶36    I CONCUR:

_____
Michele M. Christiansen, Judge

-----

20100478-CA                          16

McHUGH, Presiding Judge (dissenting):

¶37    I respectfully dissent from the decision of the majority because I am convinced that the Carters did not establish all of the elements necessary to prevail on a claim of trespass.[1]  Furthermore, even if the Carters had proved that the Dones were liable in trespass, I would reverse the award of damages.

## I.  Liability

¶38    "The essential element of trespass is physical invasion of the land; [t]respass is a possessory action."  *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998) (alteration in original) (internal quotation marks omitted).  As the Restatement of Torts explains, the invasion can be by entering in person or by placing a thing on the land of another:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
>> (b) remains on the land, or

---

[1] I also would not affirm on an unjust enrichment theory, both because it was not pleaded or tried and because the trespassing contractors, not the Carters, conferred a benefit on the Dones by dumping the dirt.  *See Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754 ("A claim for unjust enrichment in Utah requires proof of three elements: (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." (internal quotation marks omitted)).  While the Carters did confer a benefit on the Dones by leaving the dirt, they did not do so under circumstances making it inequitable for the Dones to retain the benefit without paying.  Instead, after settling with the actual trespassers, the Carters elected to leave the dirt in place.

> (c) fails to remove from the land a thing which he is
> under a duty to remove.

Restatement (Second) of Torts § 158 (1965).

¶39    The initial trespass here was the placement of the dirt on the Carters' property without their permission.  According to the district court's findings of fact, independent contractors put the dirt on the Carters' property.  Under established Utah precedent, the Dones are not liable for physical harm caused by their independent contractor unless the Dones retained control over the activity that resulted in the harm.  *See Magana v. Dave Roth Constr.*, 2009 UT 45, ¶¶ 22-23, 215 P.3d 143.  Because the district court found that the Dones did not direct the contractors to place the dirt on the Carters' property, I agree with the majority that the Dones cannot be held liable for the initial placement of the dirt under subsection (a).

¶40    Next, the Dones did not personally enter the Carters' property.  Therefore, they are not liable for trespass under subsection (b), which applies to the failure of an individual or individuals to leave property entered without the consent of the possessor or when the possessor's consent expires or is revoked.  *See* Restatement (Second) of Torts § 158 cmts. l-m.

¶41    However, "'[t]respass on [l]and' . . . includes not only entries on land resulting directly or indirectly from the actor's act, but also the presence on the land of a thing which it is the actor's duty to remove."  *Id.* ch. 7, topic 1, scope note; *see also id.* § 158(c) (explaining that a person may be liable in trespass for failing to remove "a thing which he is under a duty to remove").  But in the absence of such a duty, there is no obligation to remove a thing from another person's property.  *See U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 42, 990 P.2d 945 ("Because we hold that [the defendant] did not have a duty to remove the sign's foundation, it could not be in trespass for refusing to do so.").  Where the Dones did not place the dirt themselves, or direct the contractors to dump it on the Carters' property, they were under no duty to remove it.  To hold otherwise would impose on them the very liability that the Utah Supreme Court has held does not attach in the absence of retained control.  *See Magana*, 2009 UT 45, ¶¶ 22-23.  Thus, I would conclude that the Dones are not liable under subsection (c) of the Restatement.  *See* Restatement (Second) of Torts § 158 cmt. f ("Tort liability is never imposed upon one who has neither done an act nor failed to perform a duty.  Therefore,

one whose presence on the land is not caused by any act of his own or by a failure on his part to perform a duty is not a trespasser.").

¶42 Nevertheless, the majority holds that the Dones are liable because they "enter[ed] land," by causing the dirt to remain on the Carters' property. *See id.* cmt. b (defining "enters land" to include the presence of a thing the actor causes to remain on the land). I respectfully disagree. The district court made no findings that the Dones caused the dirt to remain on the Carters' property. There is likewise nothing in the record to support the majority's conclusion that the Dones' improvements somehow trapped the dirt and caused it to remain. *See supra* ¶¶ 16, 32. Rather, the district court found that after the dirt was pushed onto the Carters' property by the trespassers, the Dones relied on the resulting change in topography in making improvements on their own property.[2] Thus, the Dones neither dumped the dirt nor caused it to remain; they simply took advantage of the fact that it was there.[3] And they did so at their own risk because the Carters could remove it.

¶43 Indeed, the Carters previously obtained an injunction that required the contractors to remove a significant quantity of the dirt from the back of the Carters' house. In addition, Dean Anderson, one of the Dones' contractors, had to install a retaining wall at the back of the property to prevent dirt on their property from sloughing onto the Carters' property. While extracting the rest of the trespassing dirt may have resulted in damage to the Dones' improvements or required them to install another retaining wall, I do not agree that the Dones' opportunistic use of the change in

---

[2]There is no evidence that the Dones' improvements at the front of their property intrude onto the Carters' property. *See generally Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998) ("The essential element of trespass is physical invasion of the land.").

[3]As Rocky John Kay, one of the Dones' contractors testified, however, the typical practice in the neighborhood was to follow the "contour of the sidewalk," by "blending the[] front yards in together." Thus, the Carters' front yard retaining wall was unusual because the common practice was to level the front yards with fill dirt. Indeed, Kay stated, "I would have never dreamed there would have been a retaining wall there. . . . In fact, I don't . . . recall even seeing one in that neighborhood in the fronts of the yards."

contour resulting from the dirt "caused it to remain" on the Carters' property. Indeed, the Carters' decision to seek relief in the form of an injunction ordering the Dones to remove the rest of the trespassing dirt suggests that they do not believe it is trapped on their property by the Dones' improvements. Thus, I would conclude that the Dones did not trespass against the Carters by somehow causing the dirt placed by the contractors to remain on the Carters' property.

¶44 Furthermore, the Carters have already recovered from the actual trespassers for the invasion of their possessory interest in the land. The Utah Supreme Court has long recognized that

> [h]aving a single cause of action against more than one tort feasor, an injured party may proceed against the wrongdoers either jointly or severally and he may recover judgment or judgments against one or all, but he can have but one satisfaction of the cause of action. If the cause has been satisfied in full, the injured party can proceed no further. He has recovered all the law permits.

*See Dawson v. Board of Educ.*, 118 Utah 452, 222 P.2d 590, 592 (1950); *see also Nelson v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints*, 935 P.2d 512, 514-15 (Utah 1997) (plurality opinion) (citing a prior version of Utah Code section 15-4-3 (current version at Utah Code Ann. § 15-4-3 (2009))) (noting that where the plaintiff had already settled with a church's volunteer, the "plaintiff [could] not recover a windfall by receiving more than his actual damages" in an action against the church); *Western Steel Co. v. Travel Batcher Corp.*, 663 P.2d 82, 84 (Utah 1983) (citing *Dawson v. Board of Educ.*, 118 Utah 452, 222 P.2d 590 (1950), for the proposition that "[t]he law is well settled that an obligee is entitled to be paid in full but cannot exact double recovery").

¶45 The Dones argue that the settling contractors compensated the Carters in full for the trespass; the Carters deny that they have been fully compensated. "Until both sides present evidence on th[e] issue" of whether the plaintiff has been fully satisfied by the prior settlement and the "[factfinder] determines the amount of damages, that question remains open." *See Nelson*, 935 P.2d at 514. If the amount awarded is greater than what has been paid in settlement, the remaining defendant can be liable "for only the

difference between the total damage figure and the amount [the settling defendant] paid pursuant to the agreement with plaintiff." *Id.* In contrast, if the total damage awarded is less than or equal to the amount already collected, the remaining defendant "will owe nothing [to the plaintiff] regardless of its liability." *Id.* at 514-15. Where "the cause has been satisfied in full, the injured party can proceed no further. He has recovered all the law permits." *Dawson*, 222 P.2d at 592 (reversing summary judgment in favor of the plaintiff and remanding for further proceedings).

¶46 Here, the district court never resolved this factual dispute because it did not "know any of the . . . details about that settlement, because there was no discovery done about that, which . . . clearly could have been done and [the Dones] brought that up on the first day of trial." The majority agrees with that assessment. *See supra* ¶ 24. While I am also convinced that the Dones should have tried harder to obtain this information, I also note that the Dones made some efforts to obtain it. The contractors and the Carters reached their settlement after the expiration of the discovery period. Although significant time passed between that settlement and the trial against the Dones, the Carters did not pursue their claims for most of that time, acting only after the court sent a Motion to Dismiss for Failure to Prosecute. Not surprisingly, the Dones did nothing to encourage the Carters to pursue their claims against the Dones.

¶47 The Dones did attempt to present evidence of those settlement details at trial but were frustrated in their attempts. When counsel for the Dones asked Mr. Carter whether he had "settled [his] claims against Anderson Excavating and Rock Hard Construction," the Carters' attorney objected on the ground that the information was irrelevant. Although the district court allowed a yes or no answer, it later sustained the Carters' objection to further inquiry on this subject. In answer to whether he had reached a compromise with the contractors, Mr. Carter eventually testified that he had settled with them "[t]o some extent," but purported to be uninformed about the details of the settlements. When counsel for the Carters objected to "this entire line of question[ing]," the district court commented that "it doesn't sound like [Mr. Carter] has a whole lot of personal knowledge of this," and sustained the objection. The Dones then attempted to obtain information about the settlement from Mrs. Carter. Counsel for the Carters immediately interrupted, seeking a bench conference to discuss the

objection.[4]  The parties held the ensuing discussion with the district court off the record, and neither attorney asked to have it summarized as part of the recorded proceedings. After that conference, counsel for the Dones narrowly tailored his questions, asking Mrs. Carter, "Other than the amount . . . that you settled for, is there anything else that you can recall that was a term or condition of that settlement."  While counsel's delicacy in posing the post-bench-conference question to Mrs. Carter suggests an attempt to comply with the district court's instruction, it was the responsibility of the appellants to assure that the record forwarded to this court was complete.  *See State v. Nielsen*, 2011 UT App 211, ¶ 4, 257 P.3d 1103 ("An appellant has the burden to provide an adequate record for review." (citing Utah R. App. P. 11(e)(2)).  Therefore, I agree with the majority that we cannot determine whether the Carters have received a double recovery without the amount of the settlement.  The Dones have not presented a sufficient record to prove that the Carters have been made whole.

¶48  Even without those specifics, however, there is no dispute that the Carters received payment of an undisclosed damage amount from Anderson Excavating and Rock Hard, dismissed all claims against them, and then elected not to remove the dirt. Instead, Anderson graded that area of the Carters' property, and the Carters installed sprinklers, top soil, and flagstones on it.  In my view, the Carters incorporated the trespassing dirt into their land.

¶49  Section 158 of the Restatement of Torts cross-references sections 160 and 161 to explain further trespass liability under subsection (c) of section 158, dealing with the failure to remove a thing that the person has a duty to remove.  *See* Restatement (Second) of Torts § 158 cmt. n (1965).  In turn, section 161 addresses the "Failure to Remove Thing Tortiously Placed on Land," explaining that there is no liability for allowing the thing to remain if "the possessor has been fully compensated" *or* "the possessor has elected to retain the thing on the land as a part of it" *or* "if he refuses to permit the actor to enter the land and remove the thing."  *See id.* § 161 & cmt. d; *id.* § 160 cmts. l-m; *see also U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 41 n.5, 990 P.2d 945 (discussing section 160, but concluding that it was inapplicable under the facts).

---

[4]This was a trial to the court, so there was no concern that a jury would be affected by the discussion.  Nevertheless, counsel for the Carters indicated concern about affecting the witness's testimony.

The Restatement's use of the disjunctive "or" indicates that the occurrence of any one of these circumstances relieves a party of liability for the failure to remove the thing. *See generally State v. Jeffs*, 2011 UT 56, ¶ 62.

¶50    As discussed, the Dones cannot prevail on a claim that the matter has been *fully* settled due to insufficient evidence on that point. Nevertheless, the evidence plainly reflects that the Carters elected to retain the dirt on their property "as a part of it" after the settlement with the trespassers. *See* Restatement (Second) of Torts § 161 cmt. d. Consequently, I would hold that they have extinguished any alleged duty of the Dones to remove the dirt.

## II. Damages

¶51    Even if I were convinced that the Dones were liable in trespass, I would reverse the district court's damage award.

> The plaintiff's recovery [for trespass] can include compensation for diminution in the land's value and compensation for any personal or property injury that resulted from the encroachment on the land. To prove these types of damages, a plaintiff must prove the extent of the defendant's invasion and the gravity of the interference with the plaintiff's possessory rights, facts which also establish liability.

*Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1244-45 (Utah 1998) (citations omitted). Here, the only evidence of the diminution in the value of the Carters' property was the testimony from a certified general appraiser called by the Dones who indicated that the total reduction in value due to the trespass was $319. Neither party has pointed us to any other evidence that quantifies the personal or property injury that resulted from the encroachment on the land. Instead, the district court relied on its recollection that the Carters' retaining wall cost $25,000 to build and assumed that the Dones saved a like amount by relying on the trespassing dirt to build their improvements. However, the amount that it would cost the Dones to build a retaining wall is not a proper measure of damages for the invasion of the Carters' possessory interest. *See id.* at 1244.

¶52    Like the majority, I conclude that the district court could properly consider the cost of the Carters' retaining wall in applying the balancing of equities test to determine whether injunctive relief was appropriate.  Under that test, "where an encroachment does not irreparably injure the plaintiff; was innocently made; the cost of removal would be disproportionate and oppressive compared to the benefits derived from it, and [the] plaintiff can be compensated by damages; equity may in its discretion elect not to compel removal."  *See Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1259 (Utah 1975); *see also Carrier v. Lindquist*, 2001 UT 105, ¶ 31, 37 P.3d 1112. After conducting this analysis, the district court determined that the equities supported an award of damages rather than an order that the Dones remove the dirt from the Carters' property.  Once it reached that conclusion, the district court was required to award damages appropriate for an action in trespass not unjust enrichment, a claim never pleaded or tried.  Thus, I agree with the majority that the proper measure of damages was the diminution in the value of the property caused by the presence of the dirt.  *See supra* ¶ 31.  The only evidence on that point is the appraiser's testimony that the property declined in value by $319 as a result of the change in slope caused by the dirt.  Therefore, the award of $25,000 is not supported by the record.

¶53    For all of these reasons, I would reverse the decision of the district court.


_____

Carolyn B. McHugh,
Presiding Judge